ANDERSON v. HAMSON et ux.

No. 3015.   Decided August 1, 1917.   (167 Pac. 254.)

1. WATERS AND WATER COURSES—NATURAL STREAMS—CONVEYANCE OF RIGHT. In view of Comp. Laws 1907, section 1288x32, a deed to land in statutory form, without reservation of the water, conveys whatever right the grantor has to the water appurtenant to the land. (Page 153.)

2. WATERS AND WATER COURSES—SURFACE STREAMS—RIGHT TO USE—PRESCRIPTION. Where a landowner has acquired the right to use all of the water of a stream, it is unnecessary, in a suit to establish his right, to determine the exact quantity in second feet or acre feet which he was entitled to use.[1]   (Page 154.)

Appeal from District Court, First District; *Hon. N. J. Harris,* Presiding Judge.

[1] *Elmer* v. *McCune,* 29 Utah, 320, 81 Pac. 159; *Nephi Irrigation Co.* v. *Vickers,* 15 Utah, 374, 49 Pac. 301; Id., 20 Utah, 310, 58 Pac. 836; *Nephi Irrigation Co.* v. *Jenkins,* 8 Utah, 369, 31 Pac. 986; *Salina Creek Irr. Co.* v. *Salina Stock Co.,* 7 Utah, 456, 27 Pac. 578.

Suit by L. J. Anderson against Joseph Hamson and wife.

From an order dismissing the action, plaintiff appeals.

REMANDED with directions to vacate and set aside the judgment.

*Le Roy Young* for appellant.

*B. C. Call* for respondents.

THURMAN, J.

This is a controversy concerning the waters of a certain unnamed spring in Box Elder County. Both plaintiff and defendants claim title to the water, and seek by this action to have their respective titles quieted. The complaint and answer are in the form in common use in the cases of this kind. The evidence shows that the plaintiff is the owner of about twenty-four acres of meadow and pasture land situated in the N. E. ¼, Sec. 15, Tp. 9 north R. 2 West, Salt Lake meridian, in Box Elder County; that defendants are the owners of 4.09 acres about 80 rods east of plaintiff's land, and the stream of water in question rises in meadow land about the same distance east of defendants' land and flows westerly through their land to the land of plaintiff, where the same has been used for irrigation by plaintiff and his predecessors in interest. The evidence also tends to show that all of the lands above described, both plaintiff's and defendants', are arid and unproductive without artificial irrigation, but when irrigated the land produces valuable crops of hay and grass for pasture.

At the close of plaintiff's evidence defendants moved for a nonsuit upon the grounds, in substance: (1) That the evidence failed to show the quantity of water, if any, to which the plaintiff was entitled; (2) that plaintiff came into possession of his land by deed in 1911, and that the deed conveyed no water; and (3) that his grantor did not claim to own any water at the time he executed the deed. The trial court granted the motion and dismissed the action. Plaintiff appeals.

The undisputed evidence shows that plaintiff's grantor, one Craghead leased the land in question, including other lands, from the Deseret Savings Bank in 1898. Irrigating ditches were then in existence upon the lands, and Craghead used the same and applied the water in question upon the land for the production of hay and pasture; that he used the water in the same way and with the same effect in 1899, and in 1900 purchased the land outright; that he continued to so use the water upon the land from year to year until 1910, when he contracted to sell the land to the plaintiff, and in 1911 did sell it to plaintiff and conveyed the entire tract by warranty deed. The deed is in the statutory form, without reservation of the water, and, by virtue of the statute, it conveyed whatever right the grantor had to the water appurtenant to the land. Comp. Laws 1907, section 1288x32. The beneficial use of the water upon the land was not only proved by the plaintiff, but affirmatively admitted by defendants. After the plaintiff purchased the land, as stated, he continued to use the water in the same way during each and every year. He sold part of the tract, and at the commencement of this action had only twenty-four acres for which he claims water. The water in controversy, in the early part of the irrigation season, commingles with the high waters of Box Elder creek, of which it is a tributary, during which period plaintiff and his grantor were enabled to raise a crop of hay. After the waters of Box Elder creek are diverted by other appropriators in the spring, the water in question is plaintiff's sole reliance for irrigation. By means of this he sometimes raises a second crop of hay and, in any event, produces grass for pasturage. It appears from the evidence that both plaintiff and his grantor used all of the water in dispute after the waters of Box Elder creek failed to reach the land, except on rare occasions, when it was obstructed and diverted by parties other than the defendants. In the instances referred to plaintiff, or his grantor, as the case might be, would remove the obstructions from the stream and resume the use of the water to the extent of his necessities. The evidence shows that ordinarily all of the water, and sometimes more, was necessary to properly irrigate the land. and

that it was all used except for the occasional interruptions and during the surplus flow of Box Elder creek above referred to.

In April, 1915, the defendants for the first time, as the evidence shows, placed a dam in the stream and diverted the water to and upon their own land, and thereby prevented it from flowing down to plaintiff. Plaintiff was needing the water at the time. He removed the dam and let the water down, but defendants again obstructed the stream and prevented the water from reaching plaintiff's land. These interruptions continued until finally this action was commenced to determine the rights of the parties to the water. According to the undisputed evidence as it stands in the record, the defendants had never used the water until the date above mentioned. If they had any right to the water at all, it is not disclosed by the evidence submitted to the court. There is evidence that third parties sometimes used a portion of the stream, but none that the defendants ever did until 1915, on the occasion referred to.

It is difficult to see upon what grounds the court sustained the motion for nonsuit. It is quite clear from the evidence that plaintiff and his grantor, during a period of seventeen years prior to the commencement of this action, especially as against the defendants, used, and acquired the right to use, all of the waters in controversy for beneficial purposes. It is equally clear that all of the water was necessary for the irrigation of the land except when the waters of Box Elder creek would reach the land and contribute to the supply. Having acquired a right to the use of all the water of the spring, it was unnecessary at the trial to establish the exact quantity in second feet or acre feet which, under our law, are the standards of measurement. The purpose of fixing a standard of measurement is to determine exactly the quantity of water to which a party is entitled; but where a party alleges and proves that he is entitled to all the waters of a certain stream, certainly, as against his adversary who proves no right whatever, such allegation and proof is sufficiently certain as to quantity upon which to base a judgment. It cannot be possible in such a case that it is necessary to use one of the

standards of measurement above referred to, or even determine the duty of water. If a party shows he has acquired the right to the use of all the water, as against his adversary, by applying it to a beneficial use, nothing could be more definite or satisfactory as a basis for a decree. *Elmer* v. *McCune,* 29 Utah, 320, 81 Pac. 159.

Respondents cite *Porter* v. *Pettengill* et al., 57 Or. 44, 110 Pac. 395, assuming that it is similar to the present case. It is sufficient to say there is no analogy between that case and the case at bar. The decree in that case was indefinite and uncertain in several particulars. Plaintiff claimed all the water in the dry season. This was indefinite. The quantity of land was not shown. This was indefinite. Nor was there any allegation or proof that any particular land needed irrigation. Besides this, it has not been the practice of this court to dismiss an action or turn a party out of court, as was done in that case, if the party established the fact that he was entitled to water, however indefinite or uncertain the quantity might be. On the contrary, the practice has been in such case to remand the case with directions to the trial court to take further testimony as to the quantitative rights of the parties. *Nephi Irrigation Co.* v. *Vickers,* 15 Utah, 374, 49 Pac. 301; Id., 20 Utah, 310, 58 Pac. 836; *Nephi Irrigation Co.* v. *Jenkins,* 8 Utah, 369, 31 Pac. 986; *Salina Creek Irrigation Co.* v. *Salina Stock Co.,* 7 Utah, 456, 27 Pac. 578. In this case the evidence is certain that plaintiff needed and was entitled to all the water in controversy whenever the waters of Box Elder creek failed to reach his land. This was a definite point, and clearly susceptible of ascertainment at any season of the year.

It is not our province in this case to determine that plaintiff is entitled to all the water, except as against the defendants. If other persons have acquired rights, this decision, of course, will not in any manner foreclose them or affect their rights. This is an equity case, and this court has the power, and it is its duty, to determine the facts as well as the law. Numerous cases have been cited by both plaintiff and defendants relating to the question of uncertainty and indefiniteness in respect to the quantity of water claimed or proven. These cases

are not applicable to a case like this for the reasons above stated. Neither is it necessary to distinguish or review other cases cited which merely go to the question of beneficial use (a point not in dispute in the case at bar) or which confine the appropriator to an economic use. These are elementary principles in the law of irrigation, and are no longer open to controversy.

The conclusions at which we have arrived are based upon the conviction derived from the evidence that the water was applied by plaintiff and his grantor to a beneficial use; that it was all necessary when economically used, and that, as against the defendants, plaintiff had acquired a right to all of the water at the time the defendants commenced interfering with his use.

The case is therefore remanded, with directions to the trial court to vacate and set aside the judgment of nonsuit entered herein, and to prepare findings of fact and conclusions of law in accordance with the views herein expressed, and enter a decree quieting the title to all of the waters of said spring in the appellant. Appellant to recover his taxable costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.