## HOLLEY MILLING CO. v. SALT LAKE & JORDAN MILL & ELEVATOR CO.

No. 3574.   Decided April 14, 1921.   Petition for Modification Denied May 5, 1921.   (197 Pac. 731.)

1.   TRADE-MARKS AND TRADE-NAMES—NOT TRANSFERABLE INDEPENDENT OF BUSINESS OR ENTERPRISE.   A trade-mark is not transferable except in connection with some business or enterprise in which it is used, and a mere bill of sale to a trade-mark as such transfers no title.

2. TRADE-MARKS AND TRADE-NAMES—EVIDENCE HELD TO SHOW THAT PLAINTIFF SEEKING INJUNCTION WAS NOT ENTITLED TO USE A TRADE-MARK. In suit to enjoin the use of a trade-mark, evidence *held* to sustain a finding that defendant, and not plaintiff, was the owner.

3. TRADE-MARKS AND TRADE-NAMES—RIGHT TO DAMAGES FOLLOWS DECREE OF INFRINGEMENT. A trade-mark being property, and subject to protection as such, the right of its owner to damages follows a decree finding infringement.

4. TRADE-MARKS AND TRADE-NAMES—"PROFITS" OF THE INFRINGER MEASURE OWNER'S DAMAGES. The account of profits to be decreed on a finding of infringement means the net profits the infringer has actually realized, whether the owner would have made more or less on similar sales.

5. TRADE-MARKS AND TRADE-NAMES—OWNER'S ASSERTION OF HIS RIGHT HELD NOT BARRED BY LACHES. Where agreement of sale of one of defendant's mills to plaintiff was entered June 4, 1918, when plaintiff took possession, and conveyance was made August 27, and plaintiff filed complaint against defendant for infringement of trade-mark on May 30, 1919, in which suit defendant's counterclaim for plaintiff's unauthorized use, asserting ownership, was filed June 23, 1919, there was no ,laches on defendant's part barring his right.

6. TRADE-MARKS AND TRADE-NAMES—INFRINGER'S LIABILITY TO ACCOUNT HELD TO DATE FROM OWNER'S COUNTERCLAIM APPRISING INFRINGER OF OWNERSHIP. Where defendant sold to plaintiff one of its flour mills, and also some sacks with defendant's trade-mark thereon, plaintiff, on filing suit against defendant to enjoin the use of the trade-mark, must be deemed to have been apprised of defendant's ownership by his counterclaim, so that defendant's right to an accounting for profits from plaintiff's sales dated from such filing.

7. TRADE-MARKS AND TRADE-NAMES—DEED TO FLOUR MILL HELD NOT TO TRANSFER OWNER'S TRADE-MARK; "APPURTENANCES, RIGHTS AND PRIVILEGES THERETO BELONGING." A clause in a deed conveying a flour mill, one of a number owned by grantor, reading, "together with the milling plant upon said premises, and all buildings, equipment, tools, appurtenances, rights, and privileges thereto belonging" did not transfer the owner's trademark to flour; the phrase "appurtenances, rights, and privileges thereto belonging" being an ordinary term of conveyances, and well understood, includes all those appurtenances, etc., which are used in direct connection with the realty conveyed.

8.  TRADE-MARKS AND TRADE-NAMES—NO TRANSFER BY IMPLICATION
    WITHOUT SALE OF GOOD WILL OF BUSINESS. On a conveyance of
    property there is no transfer of a trade-mark by implication
    unless there is a transfer or sale of the business or good will of
    an enterprise.

9.  TRADE-MARKS AND TRADE-NAMES—TRANSFER OF TRADE-MARK FOR
    LIMITED TERRITORY MUST BE BY AGREEMENT TO THAT EFFECT.
    While a trade-mark may be acquired for limited territory
    merely, there must, to accomplish that result, be an agreement
    or understanding to that effect between the parties.

10. APPEAL AND ERROR—PLAINTIFF NOT ENTITLED TO ASSERT NEW
    BASIS OF TITLE ON APPEAL. In a suit by plaintiff to enjoin use
    of a trade-mark by defendant on theory that he acquired title
    to the property on purchasing one of defendant's mills, he could
    not assert a new basis of right on appeal on the theory that
    he had acquired the trade-mark for a limited territory merely.

Appeal from District Court, Third District, Salt Lake
County; *Wilson McCarthy*, Judge.

Action by the Holley Milling Company against the Salt
Lake & Jordan Mill & Elevator Company. From the judg-
ment, both parties appeal.

AFFIRMED in part, and REVERSED in part, with directions.

*Stewart, Stewart & Alexander*, of Salt Lake City, for ap-
pellant.

*A. G. Horn*, of Ogden, for respondent.

FRICK, J.

The plaintiff, a corporation, brought this action against
the defendant, also a corporation, alleging that the defend-
ant was wrongfully using a certain trademark, the property
of plaintiff, and asked that the defendant be enjoined from
continuing the use thereof, for an accounting, and prayed
judgment for damages.

The allegations of the complaint material to this contro-

versy will be more specifically referred to in the course of the opinion.

The defendant answered the complaint, and, after admitting certain allegations, denied all of plaintiff's alleged claims relating to said trade-mark and set up a counterclaim in which it fully set forth its rights to the trade-mark; that the plaintiff had been, and was, wrongfully and unlawfully using said trade-mark, prayed for an injunction, for an accounting, and for judgment for damages.

The facts, as they. are reflected in the evidence and the court's findings, are substantially as follows:

On the 27th day of August, 1918, the defendant was the owner of two milling plants, one located at North Salt Lake and the other at South Jordan, near Sandy, a town some distance south of Salt Lake City in Salt Lake county; that the defendant on said day, and for more than 20 years prior thereto, had continuously carried on the business of manufacturing flour at the places aforesaid, which it sold in the markets of Utah, etc.; that during all of said time the defendant manufactured and sold as aforesaid a certain brand of flour "which was known, identified, and referred to as the 'White Fawn Brand' of flour, and for which there was great demand"; that said brand of flour during the period aforesaid was manufactured of uniform quality and was placed into sacks and barrels "upon which was printed a label, or design, indicating a pictorial representation of a fawn or deer, and the words 'White Fawn,' together with the words 'White Fawn leads them all,' and other words and marks including the name Salt Lake & Jordan Mill & Elevator Company;" that said brand of flour became widely known to the trade as a valuable and desirable brand of flour, and had acquired a high reputation and had an extensive sale in Salt Lake county and elsewhere, and the sale of said flour was a great source of profit to the defendant during the period aforesaid; that "said brand became and was, and is, a trade-mark," the essential feature of which "was the pictorial representation of a fawn, or deer, used in connection with the words 'White Fawn' and 'White Fawn leads them all'"; that on June 4, 1918, the plaintiff and defendant entered into a written agreement whereby the defendant agreed to sell and the plaintiff agreed to purchase the milling plant located at North Salt Lake, including the real estate; that said agreement, among other things, provided that the defendant agreed to sell and plaintiff agreed to purchase "that certain mill site and milling plant * * * located at North Salt Lake * * * consisting of approximately three acres of land, together with the buildings and improvements thereon"; that after stating the terms

and conditions concerning payments and conveyance the agreement also provided "that first party [the defendant] does not sell hereby, but reserves to itself ownership in all goods, wares, and merchandise in trade, and all trucks, wagons, horses, harnesses, and delivery equipment"; that upon the execution of said agreement, to wit, June 4, 1918, plaintiff took possession of said milling plant and property purchased by it; that thereafter, on the 27th day of August, 1918, the defendant, by warranty deed, duly conveyed said milling plant to the plaintiff, which deed, after describing the property, contained the following: "Together with the milling plant upon said premises and all buildings, equipment, tools, appurtenances, rights, and privileges thereto belonging, except all trucks, wagons, horses, harnesses, and delivery equipment of the grantor used in connection with its said milling plant."

The court also found "that the defendant did not transfer or convey to plaintiff the defendant's business or defendant's good will, or the trade-mark 'White Fawn,' or 'White Fawn leads them all,' " nor the other words or the designs constituting said trade-mark. It is further found that said trade-mark was first used by defendant in connection with the sale of flour which was manufactured near the town of Sandy, aforesaid, and was so used prior to the use thereof at the plant at North Salt Lake, and that said trade-mark was not a part of defendant's business at said North Salt Lake; that defendant, ever since the year 1900, and prior thereto, had carried on a general milling business, and had sold the flour manufactured in said business, and during all of said time had used said trade-mark in connection with said business; that on the 4th day of October, 1905, the defendant "registered with the state of Utah" said "trade-mark," stating the particulars; that said trade-mark for more than 20 years had continuously been used by the defendant as hereinbefore stated, and that the same is of great value to the defendant, who is the exclusive owner thereof; that if the plaintiff is permited to continue the use of said trade-mark defendant will be "seriously and irreparably damaged." The court also found that the plaintiff is not the owner of said trade-mark, and is not entitled to the relief prayed for "nor to any relief whatever." The court also made a finding which, however, is more in the nature of a conclusion, namely, "that the defendant has not suffered any damages by reason of the use by the plaintiff of said trade-mark and brand."

There is also evidence upon which no findings were made showing the amount of flour the plaintiff sold with the brand or trade-mark in question during a particular period of time, and the net profits it realized from such sales, to wit, 15 cents per barrel. There is also evidence respecting the net profits

the defendant obtained from the sale of each barrel of flour with said brand or trade-mark. There are also other features upon which some evidence was produced which are not covered by the findings, and, which, so far as material, will be referred to in the course of the opinion.

The plaintiff, in its complaint, defined the trade-marks as the same is set forth in the findings, and based its right and title thereto and the right to its use upon the clause in the deed of conveyance which we have quoted in the foregoing statement. It was also made to appear at the trial that after the agreement of sale was entered into, and perhaps after the deed of conveyance was made, the defendant sold plaintiff some sacks with the brand or trade-mark printed thereon, that is, the sacks which the defendant had been using at the North Salt Lake plant with "Salt Lake City, Utah," printed on the sacks. It also appears from the evidence that before bringing this action the plaintiff claimed the right to the use of the trade-mark from a source other than from the defendant, and that pursuant to such claim, plaintiff, under date of March 17, 1919, notified the defendant as follows:

"As we have acquired from the rightful owners, Collins & Co., whose authority is recorded under trade-mark No. 107,572 in the Patent Office at Washington, D. C., the exclusive right for the state of Utah for the use of the brand 'White Fawn' for wheat flour, we therefore request that you discontinue the use of this brand at once."

At the trial plaintiff produced in evidence what is called a "bill of sale" from said Collins & Co. to the plaintiff, granting to it the exclusive right to the use of said trade-mark "White Fawn" throughout the state of Utah. In connection with said bill of sale plaintiff produced in evidence the notice it filed in which it claimed said trade-mark, in accordance with the provisions of our statute. As before stated, however, the court found that the defendant was the sole owner of, and had the exclusive right to use said trade-mark in connection with its business and that plaintiff had no right to its use.

The court made conclusions of law and entered judgment enjoining plaintiff from using said trade-mark, but denied

the defendant any damages. Both parties appeal from the judgment. Both parties assail the court's findings and conclusions of law in certain particulars, which are stated in their respective assignments of error, which, so far as material, will be considered in their order.

In view that a trade-mark is not transferable except in connection with some business or enterprise in which it is used as such (38 Cyc. 867, *Rodseth* v. *Northwestern Marble Works,* 129 Minn. 472, 152. N. W. 885, Ann. Cas. 1917A, 257, *Independent Baking Powder Co.* v. *Boorman* (C. C.) 175 Fed. 448, and *Bulte* v. *Igleheart Bros.,* 137 Fed. 499, 70 C. C. A. 76) the plaintiff obtained nothing from Collins & Co. by reason of the so-called bill of sale or transfer of the alleged trade-mark.

We remark that in view of the whole evidence the findings and conclusions of the district court that the defendant was the sole owner of said trade-mark and had the exclusive right to its use in connection with defendant's business and that the plaintiff did not have the right to use the same, are clearly sustained by the evidence, and are affirmed.

This brings us to the principal question which arises on defendant's assignment that the district court erred in refusing to award it substantial damages.

In *Enoch Morgan's Sons Co.* v. *Wendover,* 43 Fed. 421, 10 L. R. A. 283, the court said:

"It is perfectly well settled that a 'trade-mark' is property. If so, any use of it by others than the owner or rightful possessor, if unauthorized, is unlawful. * * * The law, then, is bound to protect the owner of this property in the use, and the exclusive use."

If such be the law, then the defendant is entitled to the protecting hand of the law both in securing to it the full enjoyment of its property and in awarding damages for any unlawful interference with its rights.

In view of the law as just stated, defendant's counsel contend that their client is entitled to the full measure of damages that is usually allowed in such cases. If, however, such is not the case, then they insist that their client is, never-

theless, at least entitled to the net profits which the plaintiff realized from the sale of the While Fawn brand of flour from the time it began to sell said brand. While the question respecting what damages should be allowed to the defendant in view of the circumstances of this case is not entirely free from difficulty, yet it is very clear that in view of the law applicable to such cases the findings and conclusions of the court respecting damages cannot be sustained. The only question is, What is the true measure of damages that should be applied in this case in view of all the circumstances?

The rule is so tersely and so clearly stated by the author in 4 Sutherland on Damages (4th Ed.) § 1201, that we take the liberty of repeating it here:

"In equity, if there is ground for invoking its jurisdiction, and an infringement has been found and decreed, and there has been no unreasonable delay in commencing the suit, an account of profits will be decreed, which means the net profits the infringer has actually realized. This rule holds good regardless of whether the owner would have recovered a like profit on similar sales."

In cases where bad faith in the use of the trademark is shown, additional elements of damages are          4 sometimes permitted, and larger damages are allowed.

The measure of damages as it is stated in the above quotation from Sutherland is sustained by the overwhelming weight of authority. We shall refer to only a few of the many cases that could be cited upon the subject, namely: *Regis* v. *Jaynes & Co.*, 191 Mass. 245, 77 N. E. 774; *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.*, 100 Me. 461, 62 Atl. 499, 4 L. R. A. (N. S.) 960; *El Modello, etc., Co.* v. *Gato*, 25 Fla. 886, 7 South. 23, 6 L. R. A. 823, 23 Am. St. Rep. 537; *Graham* v. *Plate*, 40 Cal. 593, 6 Am. Rep. 640; *Wolf Brothers* v. *Hamilton-Brown Shoe Co.*, 206 Fed. 611, 124 C. C. A. 409, affirmed in 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629. We shall hereinafter again refer to some of the foregoing cases.

Plaintiff's counsel contend, however, that the defendant had permitted the plaintiff to use the trade-mark, and had otherwise been guilty of laches or delay in asserting its claim, and that for that reason the district court's finding

and conclusion that the defendant is not entitled to substantial damages should be sustained. There is no merit to the contention that the defendant should be deprived of all damages merely because it did not sooner assert its right to the exclusive use of the trade-mark in the courts. In this case the agreement of sale was entered into on the 4th day of June, 1918, at which time the plaintiff took possession of the milling plant. The deed of conveyance was made August 27, 1918, and the complaint in this case was filed May 30, 1919. Defendant's answer and counter-claim was filed June 23, 1919. No case is cited, and none can be found, we think, wherein it is held that a mere delay of such a short period of time will bar an action for relief. True it is that long delays, when coupled with other circumstances, may deprive a plaintiff of the right to an accounting from the infringer of a trade-mark, for profits, and may limit the owner to the equitable remedy of an injunction. The cases are numerous, however, wherein it is held that although the owner of a trade-mark, in case of infringement, delayed the bringing of an action he is, nevertheless, entitled to an accounting for the profits realized by the infringer from the time the right to the exclusive use of the trade-mark is asserted in court by the owner.

In *Enoch Morgan's Sons Co.* v. *Troxell,* 57 How. Pr. (N. Y.) 121, it is held:

"Damages will be given only for such sales as have taken place after the commencement of the action where it is shown that the plaintiff knew of the infringement but took no steps to arrest it."

It is true that that case was overruled in 89 N. Y. 293, 42 Am. Rep. 294. It was, however, overruled upon another point, and the rule respecting the measure of damages was not assailed. The decision in 89 N. Y. was, however, later indirectly overruled by the federal court in *Enoch Morgan Sons Co.* v. *Wendover, supra,* where the decision in 57 How. Pr., before referred to, was sustained.

In *Menendez* v. *Holt,* 128 U. S. 514, at page 524, 9 Sup. Ct. 143, at page 145 (32 L. Ed. 526), in speaking of the effect of delay in asserting the right to the exclusive use of

a trade-mark or where implied consent to its use is claimed, the Supreme Court of the United States says:

"Where consent by the owner of the use of his trade-mark by another is to be inferred from his knowledge and silence merely, 'It lasts no longer than the silence from which it springs; it is, in reality, no more than a revocable license.'"

In 38 Cyc. 884, it is said:

"Laches or delay is a bar to an accounting for profits and the recovery of damages for *past infringements* even though not sufficient to bar an injunction against a further continuance of the wrong." (Italics ours.)

By "past infringements," as we understand the term, is meant the period of time preceding the bringing of an action. That doctrine is well illustrated in the case of *Regis* v. *Jaynes & Co., supra,* where, in the course of the opinion, it is said:

"The defendants argue that in such a case as this, while an injunction may be granted to protect the rights of the plaintiffs in their trade-name, yet the defendants should not be held for the profits which they had realized by selling articles bearing a name like the one used by the plaintiffs, in the absence of any fraudulent intention on their part, when it was found that they had acted in ignorance of the plaintiffs' rights, and it did not appear that substantial injury had been done to the plaintiffs before the filing of their bill. There is some conflict in the decisions; but we think that the weight of modern authority is in favor of the rule that an account of profits will not be taken where the wrongful use of a trade-mark or a trade-name has been merely accidental, or without any actual wrongful intent to defraud a plaintiff or to deceive the public [citing cases].

"But we do not think that the defendants are protected by this principle against the taking of the account here in question. The account is ordered to be taken only since the filing of the original bill, upon the charge made in the supplemental bill that during the litigation the defendants have persisted in their infringement. It cannot be said that this conduct on their part was in ignorance of the plaintiffs' rights; they were at least put upon inquiry, and must be charged with knowledge of what they would have learned upon reasonable inquiry. Nor can it be said that their conduct since the filing of the bill was innocent or free from wrongful intent within the meaning of the rule which has been stated. They chose after full notice and warning to persist in violating the plaintiffs' rights. If the facts as they afterwards were proved could have been made manifest to the court when the bill was filed, an injunction must have issued then. It does not lie in the defendants'

mouths to say that conduct on their part which afterwards was proved to have been wrongful, and as to which they had either full knowledge or the means of obtaining full knowledge of the facts, was either lawful or innocent."

In the case just quoted from profits were allowed only from the commencement of the action.

In *W. R. Lynn Shoe Co.* v. *Auburn-Lynn Shoe Co.*, supra, the rule respecting damages is stated thus:

"The rule which now prevails in the equity courts respecting the wrongdoer's accountability for the 'profits and damages' resulting from his unlawful acts, requires the master not only to take an account of all profits made by the defendant, but also to make an inquiry in regard to all damages sustained by the plaintiff on account of the defendant's wrongful acts, and since it cannot be ascertained with any reasonable certainty how much of the profit is due to the trade-mark and how much to the intrinsic value of the commodity, the whole will be awarded to the plaintiff. It is equally well settled that the profits recoverable in equity for unfair competition are governed by the same rule as in cases of infringement of trade-marks, and are not limited to such as accrue from sales in which it is shown that the customer is actually deceived, but include all made on the goods sold in the simulated dress or package, and in violation of the rights of the original proprietor" (citing cases).

In that case profits were likewise allowed from the commencement of the action.

The true rule respecting the measure of damages in cases where there is delay in bringing an action, or where there are circumstances showing that the use of the trade-mark was not intentionally wrongful, is also well stated in the following cases in which an accounting was allowed from the bringing of the action: *Wolf Brothers* v. *Hamilton-Brown Shoe Co.*, supra, affirmed in 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629; *El Modello, etc., Co.* v. *Gato*, supra. In the foregoing cases numerous other cases are cited which sustain and illustrate the doctrine, and in view of that we shall not quote further from the cases nor cite others here.

In the case at bar there is nothing to show that the plaintiff acted in bad faith in the initial use of the trade-mark. It, however well knew that the defendant had been, and was continuing to, use the trade-mark in the sale of flour when

it attempted to buy the same from Collins & Co., and when it notified the defendant of that fact and demanded that the latter should cease using the same. At that time it must have been aware of two facts: (1) That it did not obtain the trade-mark by purchasing one of defendant's milling plants; and (2), that the defendant was claiming it as a trade-mark in connection with its milling business although it had not formally protested that the plaintiff might not use it as it was doing. It should also be observed that in the case at bar, as in the case of *Regis* v. *Jaynes & Co.*, supra, a supplemental counterclaim was filed by the defendant that the plaintiff was persisting in and continuing the sales of flour with defendant's trade-mark, and by reason of that conduct was damaging the defendant. The plaintiff here, as was the case in the *Regis Case,* continued the infringement until enjoined from doing so by the court. Under such circumstances the plaintiff cannot successfully contend that it committed no wrong.

There was some conduct on the part of the defendant, however, which is, perhaps, also open to criticism. The defendant sold plaintiff some sacks with the trade-mark thereon, knowing that they would be used during the summer of 1918 in selling flour. While it is true that the sacks that were sold to the plaintiff had the Salt Lake City address upon them, it nevertheless might have been construed by the plaintiff into a permission by the defendant of the use by plaintiff of the trade-mark in disposing of the flour manufactured at the plant purchased by plaintiff. If it be assumed that defendant's act constituted consent, then such consent, as is well pointed out by the Supreme Court of the United States, amounted to no more, and could amount to no more, than a revocable license. If, therefore, the plaintiff is given the full benefit of every doubt respecting its good faith in the matter, nevertheless, in view of its own acts and conduct to which reference has been made, that it did not own the trade-mark, and without the consent of the defendant had no right to its use after the defendant had filed its counterclaim, how can it escape liability? Assuming, however, that the plaintiff was

justified in believing that the defendant made no objection to plaintiff's use of the trade-mark immediately after the sale of the sacks aforesaid, yet when the defendant came into court and set forth the facts respecting its title, and claimed its legal rights, the plaintiff no longer had any reasonable ground upon which to base its claim of ownership and right to the use of the trade-mark in connection with its milling plant. As pointed out by the Supreme Judicial Court of Massachusetts in *Regis* v. *Jaynes & Co.*, supra, from the time that the defendant set up its claim the plaintiff had absolute knowledge of defendant's rights and the source of its title to the trade-mark.

Moreover, if the facts had been made known to the district court which were made to appear at the trial, the court should, and no doubt would, at once have enjoined the plaintiff from using the trade-mark, because such use was unlawful as against the defendant. From that time on, therefore, in contemplation of law, the plaintiff must be held to have used the trade-mark without authority and without right, and hence it should be required to account to the defendant for the profits it realized from the sale of flour under the White Fawn brand. The defendant, however, claims that it sold its White Fawn flour at a net profit of 25 cents a barrel, and therefore it should be awarded the profit it received from sales made by it. The authorities, however, all lay down the rule that the measure of damages is the net profits which the infringer of the trade-mark received from all sales made by him, and that is the rule which, in our judgment, should prevail in this case. Defendant is therefore entitled to an accounting from and after June 23, 1919, up to the entry of judgment in this case. While there is a statement of sales of White Fawn flour that were made, and the net profits that were derived therefrom by the plaintiff during the period commencing August, 1918, to some time in the year 1919, yet there is no statement covering the period of time to which we have held that the defendant is entitled to an accounting, to wit, from the 23d day of June, 1919, to the date of the entry of judgment enjoining the plaintiff from using the trade-mark.

We remark that we do not wish to be understood as hold-
ing that in all cases where there is delay in asserting the right
to the exclusive use of a trade-mark the owner can recover
damages only from the time the right is asserted in court.
There may be cases of reasonable delay where the circum-
stances in no way countenance the use of the trade-mark by
the infringer and where the right to an accounting will re-
late back to the very inception of the use of the trade-mark
if wrongful. The measure of damages in the case at bar is
based on what we conceive to be the overwhelming weight
of authority in cases of this character where there is some
doubt respecting the use of the trade-mark before the right
is asserted in the courts.

There is no merit in the other assignments of error argued
by defendant's counsel, and we shall not pause to consider
them further.

This brings us to the plaintiff's appeal and to its assign-
ments of error.

There is no merit to plaintiff's contention that the trade-
mark was transferred by the deed of conveyance by any-
thing that is said therein. The clause in the deed which is
relied on, and which reads, ''together with the milling plant
upon said premises and all buildings, equipment, tools, ap-
purtenances, rights, and privileges thereto belonging'' is a
usual clause in deeds of conveyance. Under our statute all
of those things would have passed without express mention,
except equipment and tools, and if those had been permanent-
ly attached to the buildings, they perhaps would also
have passed without express mention. Again, the le-          7
gal import of the phrase ''appurtenances, rights, and
privileges thereto belonging,'' as is well understood, includes
all those appurtenances, etc., which are used in direct con-
nection with the real estate conveyed. In some instances
more and in some others less, is thereby conveyed, depending
entirely upon what easements, rights and privileges are used
in connection with the real estate conveyed. We do not think
that a single case can be found, certainly none is cited, and
we know of none, wherein it was held that under such terms

trade-marks are transferred and pass to the vendee. The difficulties that would arise from such a holding might not only be various, but might lead to disastrous results. Suppose, as is the case here, that the vendor continued to carry on the same business in the same vicinity in another plant which it was carrying on in connection with the plant sold, and thus would necessarily continue in the business of manufacturing and selling flour, could it thus be inferred, without an express agreement, that the vendor intended to part with its trade-mark? Suppose further that the vendor manufactures and sells a number of brands of flour, all of which have become connected with, and are, trade-marks in his business, as is the case with the plaintiff here, which, the record shows, manufactured and sold 10 different brands of flour, would, under such circumstances, the deed be held to have passed all of them, and if not, how many? If, however, one or more did pass to it, would not all have passed? Quite apart from the foregoing considerations, however, the conclusion is irresistible that it was not intended at the time the deed was made, by either party, that the trade-mark should pass; and, as a matter of law, it did not pass to the plaintiff.

Nor is plaintiff's contention tenable that it purchased or obtained the right to use the trade-mark in any other manner than by deed of conveyance. It is true that the right to use a trade-mark may be acquired by purchase without any express terms mentioning the trade-mark in the instrument of conveyance or transfer of the property with which the trade-mark is used. If a trade-mark is transferred that way, however, it must be done by acquiring the good will of the business in connection with which the trade-mark is used, and of which it is a part. Where it has been held that      8 the trade-marks passed, the vendee has always acquired the good will of the business purchased, and, as a general rule, the vendor has retired from the business. Under such circumstances the courts have held that where, from the whole transaction, it clearly appears that it was the intention of the vendor to part with, and the intention of the vendee to acquire, the good will of the business transferred as a part

of the transaction, the trade-mark or trade-name used in connection with, and as an incident to, the business may pass without expressly so stating in the instrument of transfer. To that effect are the authorities cited by plaintiff, but they go no farther than that. There is nothing of that nature in this case:

It is, however, also contended that a trade-mark may be acquired for a limited territory merely, and in support of that contention the case of *The Coca-Cola, etc., Co.* v. *The Coca-Cola Co.* (D. C.) 269 Fed. 796, is cited. There is no doubt that such is the law, but in order to accomplish that result there certainly must be an agreement or understanding to that effect between the parties. How can any one determine how much territory is intended to be transferred, or is, in fact, transferred, unless it is stated and agreed upon by the parties? The plaintiff in its complaint did not base its right to the trade-mark upon any such theory; nor, in view of its acts and conduct, to which reference has been made, can a right thereto be based upon any such hypothesis. It is not enough merely to assert a right in this court. The right, if it exists, must have some basis in the pleadings, and be supported in the proceedings. It is manifest from this record that plaintiff did not acquire the right to the use of the trade-mark in question in any manner whatever, and hence its claim in that regard must fail.

The findings and conclusions of the court are, therefore, not only supported by the evidence, but, in so far as they are against the plaintiff, are clearly right. There is no merit to plaintiff's other assignments of error, and we shall not devote further time to them.

The findings of fact and conclusion of law that the defendant did not sustain, and is not entitled to, substantial damages are, however, disapproved and set aside, and the judgment to that effect is reversed. In all other respects it is affirmed. The case is therefore remanded to the district court of Salt Lake county with directions to set aside its finding of fact and conclusion of law that the defendant did not

sustain, and is not entitled to, damages; that it require the plaintiff to render and make a full and accurate account of all the sales of White Fawn brand of flour from the 23d day of June, 1919, to the date that the court entered judgment enjoining the plaintiff from the use of the trade-mark at the net profit of 15 cents per barrel, and upon such account the court enter judgment for such amount in favor of the defendant and against the plaintiff herein; defendant to recover costs on this appeal.

CORFMAN, C. J., and WEBER, GIDEON, and THURMAN, JJ., concur.