## THOMPSON et al. v. McKINNEY et al.

No. 5784.   Decided January 4, 1937.   (63 P. [2d] 1056.)

Rehearing Denied March 6, 1937.

*M. E. Wilson, Henry D. Moyle, E. A. Walton,* and *Robert C. Wilson,* all of Salt Lake City, for appellants.

*D. N. Straup* and *Clawson & Elsmore,* all of Salt Lake City, for respondents.

FOLLAND, Justice.

Plaintiffs brought suit to quiet title to certain ranch lands and water rights claimed to be appurtenant thereto. No question arises as to plaintiffs' ownership of the land. That is conceded. The dispute has to do with the water rights. The ultimate question is whether on mortgage of the land certain water rights owned by the mortgagor passed by the mortgage and foreclosure thereof when there was no express mention of water or water rights either by way of conveyance or reservation.

John L. McKinney and Rhoda J. McKinney, his wife, gave a mortgage dated July 31, 1920, to Serena E. Mc-Kinney on 1,280 acres of land located in the vicinity of Fairfield, Cedar Valley, Utah county, Utah, to secure payment of a note for $14,000. Serena E. McKinney was the mother of John L. McKinney. It is alleged in the complaint, and admitted by answer, that on the date of the mortgage, McKinney was the owner of one-sixth of the summer flow and two-thirds of the winter flow of a certain spring known as Fairfield Spring. John L. McKinney, mortgagor, and Serena E. McKinney, mortgagee, are now deceased. The mortgage was foreclosed after the death of the parties and the land was purchased at foreclosure sale by the then executor of the estate of Serena E. McKinney, and later by it conveyed to the present administrator and administratrix of said estate, who are the parties plaintiff herein. The individual defendants are the widow and children of John L. McKinney, his heirs, who succeeded to whatever right, title, or interest he may have had in and to the waters in dispute. The corporate defendant was organized by the individual defendants and its stock is owned beneficially by them. They conveyed to the corporation all their interest in and to the waters of the Fairfield Spring. Whatever right or interest to these waters would be in

John L. McKinney if he were now alive, are now vested in the corporation defendant. If the water rights passed to plaintiffs by reason of the mortgage, its foreclosure, and the purchase of the property by them, then the water rights were properly decreed to them by the trial court. On the other hand, if such water rights did not so pass, but remained in John L. McKinney, the mortgagor, then the judgment should be reversed and title to such waters decreed to the McKinney Land & Livestock Company.

The mortgage was the short form prescribed by statute, which, without express words "shall have the effect of a conveyance of the land therein described, together with all the rights, privileges and appurtenances thereunto belonging." R. S. Utah 1933, 78-1-13. The statute provides, section 100-1-10, R. S. 1933, that

"Water rights shall be transferred by deed in substantially the same manner as real estate, except when they are represented by shares of stock in a corporation."

Section 100-1-11 provides:

"A right to the use of water appurtenant to land shall pass to the grantee of such land, and, in cases where such right has been exercised in irrigating different parcels of land at different times, such right shall pass to the grantee of any parcel of land on which such right was exercised next preceding the time of the execution of any conveyance thereof; * * * provided, that any such right to the use of water, or any part thereof, may be reserved by the grantor in any such conveyance by making such reservation in express terms in such conveyance, or it may be separately conveyed."

This provision is substantially the same as section 3477, Comp. Laws Utah 1917, which was in effect at the time of making the mortgage. The pertinent question, therefore, is whether the waters were appurtenant to the land at the time the mortgage was given, and if so, whether the water rights passed with the land by the mortgage.

It is well settled in this jurisdiction that a deed in statutory form, without reservation of water, conveys whatever rights the grantor has to the water appurtenant to the

land. *Black* v. *Johanson*, 81 Utah 410, 18 P. (2d) 901; *Anderson* v. *Hamson*, 50 Utah 151, 167 P. 254; 2 Kinney on Irr. and Water Rights (2d Ed.) § 1011, p. 1804, and § 1009, p. 1796; 67 C. J. 1099. The same is true on the making of a mortgage in statutory form. Section 78-1-13. The effect would be the same as in a deed; that is, a mortgage in statutory form without reservation of the water is a "conveyance of the land, together with all the rights, privileges and appurtenances thereunto belonging."

The facts with respect to the use of the summer water and of the winter water are somewhat different, so we shall discuss each separately. The summer water is referred to as 12 shares. This merely means that McKinney was the owner of 12 out of 72 or 73 shares which represented all the interests in the entire spring. There was no corporation or other organization by which shares of stock were issued. There is no question in this case respecting water rights represented by shares of stock in a corporation. We do not attempt to determine whether water represented by shares of stock in a corporation may or may not, under the situation disclosed by the evidence in this case, pass as appurtenant to the land.

The trial court found with respect to the summer water that on July 31, 1920, the date of the mortgage, John L. McKinney was the owner and entitled to the use of 12 shares of the water from Fairfield Spring and creek during the irrigation season, and that for more than five years prior and subsequent thereto, and until his death in 1923, during each and every irrigation season he used all such water for irrigation purposes by means of dams and diverting ditches on about 125 acres of cultivated portions of the ranch lands mortgaged to Serena E. McKinney, and that by such use he raised valuable crops consisting of hay, grain, beets, and potatoes, and that such waters were used exclusively on the cultivated portions of said ranch; that

since the death of John L. McKinney his successors in interest have used all such waters for irrigation purposes on lands of the ranch, and that the use of such waters is and was necessary to raise crops, and without the use of such waters no crops could have successfully been raised or produced. We have examined the record and believe the above findings abundantly supported by evidence. There seems to be no conflict except that the witnesses for defendants minimize the amount of acreage irrigated by the 12 shares of water, and defendants contend that such amount of water could not adequately irrigate to exceed about 65 acres of land. That the water was used to irrigate 65 to 82 acres of land is shown by the testimony of defendants' witnesses. There is evidence tending to show some rotation in the use of water on the land irrigated so that all of the 125 acres of cultivated land were not planted to crops and irrigated each and every season, but that from 65 to 90 acres of the 125 were irrigated every season. A point is attempted to be made that the water could not be appurtenant to the 1,280 acres of ranch land, since only 65 to 90 acres could be irrigated in any one season. We think there is not anything to this suggestion, because the acreage on which the water had been used is a part of the 1,280 acres. The water was not attempted to be used indiscriminately over the whole 1,280 acres, but on a certain and definite portion thereof not exceeding 125 acres. Unless found to be not appurtenant for some other reason, it would follow that the water was appurtenant to at least the land on which it was last used. Appellants urge that the water was intended to be and was kept separate from ownership in the land and was held as a "right in gross" as the property of John L. McKinney because of the manner in which it had been treated in various conveyances and mortgages prior to the giving of the mortgage to Serena E. McKinney. That is, in other deeds and mortgages the water is expressly mentioned, but in the Serena E. McKinney mortgage it is not mentioned, and this after pay-

ment by John L. McKinney of $3,000 on the indebtedness to his father, reducing his obligation from $17,000 to $14,000. It was shown that John L. McKinney obtained six shares of the water in 1913 by conveyance from his father wherein the water was expressly mentioned and conveyed in connection with 560 acres of land. Defendants offered to prove the conveyance of other six shares by deed expressly mentioning the water wherein other lands were conveyed to McKinney by a person other than his father. This evidence was excluded by the court. With respect to the mortgages given by John L. McKinney, the court found as follows:

"Over and subject to the objection of counsel for plaintiffs the defendants were permitted, for certain purposes, to put in evidence an abstract of title of the said lands of the John L. McKinney ranch and mortgaged to the said Serena E. McKinney, which abstract of title among other things shows five mortgages executed at different times by John L. McKinney, some upon a part and some on all of the said ranch lands, all prior to but satisfied, released and canceled before the mortgage of July, 1920, was given to the said Serena E. McKinney. Two of such prior mortgages were given to the Bank of American Fork on a part of the lands of said ranch property, one in 1911 and the other in 1914; and one in 1917 to the Peoples State Bank of American Fork, in all of which mortgages with a description of the mortgaged premises it was also stated 'together with 6 shares of the Fairfield spring waters'; a mortgage dated November 18th, 1913, by John L. McKinney to Jacob L. McKinney for $9,000.00 on 480 acres of the ranch lands and with a description of such mortgaged premises the mortgage also stated 'together with 6 shares of Fairfield spring waters; and a mortgage by John L. McKinney to Jacob L. McKinney dated January 3rd, 1918, for $17,000.00 upon all of the ranch property, and with a description of such mortgaged premises also stated 'together with 12 shares of Fairfield spring water.' Such prior mortgages were put in evidence by the defendants over and subject to the objections of the plaintiffs, for the stated purpose of showing an intention of the mortgagors, that in giving the mortgage by them to Serena E. McKinney, none of the summer or winter waters of the said John L. McKinney was to pass or to be granted by the mortgage, no express mention having therein been made of any waters. As to such fact or issue the court, upon considering and weighing all the evidence in the case, finds such contention or issue against the defen-

dants and in favor of the plaintiffs. Though the recitations of such summer waters in such prior mortgages be regarded as competent and proper evidence to be considered for such stated purpose, which they are not, yet when considered in connection with all the evidence in the case bearing upon the subject, they are not sufficient to show an intention on the part of the mortgagors of the mortgage given to Serena E. McKinney in July, 1920, to reserve and not thereby mortgage the said summer and winter waters which, and as the court finds, were in fact appurtenant to the lands mortgaged and described in the Serena E. McKinney mortgage; and from the evidence, and as the court finds, that the note of July, 1920, executed by John L. McKinney to his father Jacob L. McKinney, in the sum of $14,000.00, was for money loaned to John L. McKinney by Jacob L. McKinney and for lands purchased by John L. from Jacob L. McKinney, and the assignment and endorsement of the note to Serena E. McKinney; and also as shown by the evidence and as the court finds, that none of such waters, either summer or winter waters, were inventoried or listed in the estate of John L. McKinney of which the said Rhoda J. McKinney was the administratrix, and not distributed as property of the said estate; and as also conclusively shown and as the court finds, that no reservation whatever of any of such waters was made or reserved by the mortgagors in the mortgage to Serena E. McKinney; and as shown by the evidence and as the court finds, that such mortgage of the lands described therein, without the waters and water rights appurtenant thereto as shown by the evidence and as found by the court, would have been wholly inadequate to secure the payment of the note of $14,000.00, and thus highly improbable that a mortgage under such circumstances would have been acceptable or accepted; and from all of which, and from all of the evidence in the case, the court from a preponderance and the greater weight thereof, finds the fact to be that it was not the intention of the mortgagors, or either of them, in giving the mortgage to Serena E. McKinney, to reserve any of the 12 shares of summer waters or any part of the winter waters, and that it was the intention both of the mortgagors and of the mortgagee by such mortgage and as appurtenances to the mortgaged lands to grant and pass all of such waters then owned by the said John L. McKinney and which for a beneficial use, as hereinbefore found, were and had been used and applied by him on the lands and premises described in the mortgage."

We see no reason to disturb this finding or the conclusions which follow from it. The mere fact that the water rights were conveyed to John L. McKinney by specific men-

tion in the deeds, and that the water right was mentioned in mortgages prior to the giving of the one in question, is not sufficient evidence of an intention to segregate the waters from the land in the face of its continual use on the mortgaged premises both before and after the date of the mortgage, and a failure to reserve such waters in the mortgage or to convey them separately to another, and especially since it is shown that such use was not only beneficial but necessary to the use and enjoyment of the land.

Appellant seems to argue that the water right is not appurtenant unless indispensable to the use and enjoyment of the ranch, citing *Humphreys* v. *McKissock,* 140 U. S. 304, 11 S. Ct. 779, 35 L. Ed. 473. In that case the court referred to appurtenances as including only such property as is indispensible to the use and enjoyment of the franchise of the company, where the subject-matter of the claimed appurtenance was an elevator building situated more than one-half mile from the railroad on land not owned by the mortgagor which was under mortgage. This court gave the following definition in *Holley Milling Co.* v. *Salt Lake & Jordan M. & E. Co.,* 58 Utah 149, 197 P. 731, 736:

"Again, the legal import of the phrase 'appurtenances, rights, and privileges thereto belonging,' as is well understood, includes all those appurtenances, etc., which are used in direct connection with the real estate conveyed. In some instances more, and in some others less, is thereby conveyed, depending entirely upon what easements, rights, and privileges are used in connection with the real estate conveyed."

In 2 Kinney on Irr. and Water Rights (2d Ed.), § 1011, p. 1804, the author says:

"The doctrine is well settled in the States of the arid region, that a water right used in connection with a certain tract of land for the irrigation thereof, where necessary to the beneficial enjoyment of the land, together with the ditch, canal, or other works necessary to conduct the water to the place of use, become appurtenances to the land, provided that they are all owned by the same parties."

In *Koon* v. *Empey,* 40 Idaho 6, 231 P. 1097, 1098, the court said that the waters

"having been used to irrigate the lands now owned by respondent in 1905, and several years prior, the water became appurtenant to the land; for there can be no question that a water right becomes appurtenant to the land to which it has been applied and upon which the water has been used for irrigation";

and said the court further, that in the absence of a specific reservation to the contrary contained therein, a deed of conveyance of land containing the usual appurtenance clause, effects a conveyance of the water right appurtenant to the land. In *Lensing* v. *Day & Hansen Security Co.,* 67 Mont. 382, 215 P. 999, the court said:

"A water right, acquired by appropriation and used for a beneficial and necessary purpose in connection with a given tract of land, is an appurtenance thereto, and as such passes with the conveyance of the land, unless expressly reserved from the grant."

This court in *Black* v. *Johanson,* 81 Utah 410, 18 P. (2d) 901, 902, held that under the findings and evidence the waters there in dispute constituted an appurtenance to the land, the finding of the court being:

"That one city lot of water-right was assessed with the land described hereinbefore for the year 1923, and that said water-right was not and is not represented by any share or shares of stock in any corporation, association, or company, and that said water-right has been used upon the land for many years prior to 1923 and has been used continuously thereon since 1923 and is a part of the real estate and passes therewith."

We are satisfied on the facts disclosed by the evidence and as found by the court that the summer water was appurtenant to the land, and not being re- ■ served to the mortgagor in the mortgage or otherwise separately conveyed to another, it passed with the land.

We now consider the winter water. With respect to this, the court found that during the year 1920 when the mort-

gage was given to Serena E. McKinney, and for more than five years prior and subsequent thereto, and until the death of John L. McKinney, he was the owner of and entitled to the exclusive right to the use of about two-thirds of the whole of the winter waters of the spring and creek, and during all of such time these waters were beneficially used by him for watering livestock on his premises, and by means of dams, dykes, and ditches diverting such waters from the natural channel of said creek during winter seasons of each year and spreading and flooding them on meadow land consisting of 600 or more acres of the ranch lands included in the mortgage of Serena E. McKinney, and that by means of such diverting, spreading, and flooding of the meadow lands, he was able each year to, and did, raise substantial crops of wild hay, and was able to grow and produce meadow and grasses for pasture of livestock, and that without the use of such waters, he was unable to grow crops of wild hay or other grasses for pasture or for other useful purposes, and without the use of such waters such lands would remain arid in character and of little or no substantial value, and that the use of the flow of such winter waters during the winter season is and was necessary to properly flood and irrigate the meadow lands for the purposes mentioned.

As to this finding, the evidence is in conflict. A number of witnesses testified for plaintiffs to the effect that the winter waters in 1920, and prior and subsequent thereto, were used by John L. McKinney to irrigate the meadow lands of his ranch, and that the water was spread over such lands by means of dams and ditches and that he watered his livestock therefrom, and that such waters were beneficial and necessary to the growth of the grasses and wild hay produced in the meadow. Defendants' witnesses testified that the winter waters were allowed to course through the ranch in the natural channel to a certain place called the "sink" and to fill a pond there at which sheep and cattle would water, but that such waters were not

spread on any meadow lands or put to any other beneficial use. The trial judge visited the ranch and viewed the premises before making his decision. He was in a much better position than we are to weigh the evidence and test the credibility of the witnesses. We are satisfied the preponderance of the evidence supports the finding with respect to the use of the winter waters. There was no mention of winter water in any of the deeds received or mortgages given by John L. McKinney. Its ownership by him in 1920 when the land was mortgaged to Serena E. McKinney is admitted. The general question of whether winter waters are agriculturally beneficial to lands is not up for decision in this case. That they were used on the lands mortgaged during the winter was found by the court and is supported by the evidence. That is as far as we need go in this case. The water having been used on the meadow lands of the ranch prior and subsequent to the mortgage as found by the court, and no segregation or reservation made thereof, it would pass with the land as appurtenant.

Errors are assigned and referred to in appellants' brief with respect to the admission and exclusion of evidence, but such matters are not of sufficient moment to warrant discussion. The decision must have been the same had the court been more liberal in admitting the testimony offered and excluded or more restrictive in excluding testimony admitted over defendants' objection. Some of the testimony excluded had to do with defendants' offer to prove the extent of the use of the summer water by McKinney as early as 1913. The testimony admitted over objection was with reference to the market value of the land and water in 1920.

The judgment and decree of the district court of Utah county is affirmed, with costs to respondents.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.