Ruby ROBERTS, Plaintiff and Respondent,

v.

Brice H. ROBERTS, a/k/a Brice Roberts, a/k/a Bryce Roberts, and Shirley Roberts, his wife, Defendants and Appellants.

No. 15262.

Supreme Court of Utah.

July 31, 1978.

Arthur H. Nielsen and Clark R. Nielsen of Nielsen, Henriod, Gottfredson & Peck, Salt Lake City, for defendants and appellants.

Dale M. Dorius, Brigham City, for plaintiff and respondent.

MAUGHAN, Justice:

Plaintiff Ruby Roberts brought this suit in equity to set aside certain conveyances of property by Howard Roberts, her deceased husband, to his son, Brice Roberts. Plaintiff also asked for an accounting of income derived from the lands in question; and for an interest in certain water rights. The trial court awarded plaintiff her statutory interest [1] in several properties and certain water rights, and determined plaintiff was entitled to one-third of the fair rental value

1. Sec. 74–4–3 (repealed 1977).

of the lands for a three-year period. Defendants appeal only two parts of the court's decision. We reverse. Costs to appellants. All statutory references are to Utah Code Ann., 1953.

Defendants first state the trial court erred in determining that seven-tenths of a second-foot of "AA" water rights originally owned by Howard Roberts were appurtenant to lands in which plaintiff has a statutory dower interest.

The relevant facts are as follows. In 1936, Howard Roberts, the father of defendant Brice Roberts, owned and operated a farm near Gunnison, Utah. He was not then married, but lived with three of his children by a previous marriage. The farm was bordered on the east by the Gunnison-Fayette Canal and on the west by the Sevier River.

On May 20, 1936, Howard Roberts executed a warranty deed conveying 120 acres of pasture land to his son Brice, reserving for himself a life estate and the right to exercise all incidents of ownership during his lifetime. The land was situated just west of the Gunnison-Fayette Canal.

In that same year, Judge Cox issued the "Cox decree," the final adjudication of rights among water users to the Lower Sevier River system. The Cox decree awarded Howard Roberts seven-tenths of a second-foot of "AA" rights, "to be diverted into the Gunnison-Fayette Canal and used to irrigate lands under its canal system." Brice Roberts used these "AA" rights each year on the 120 acres granted him by his father, until 1963.

The record indicates that due to the slope of the land, it was impossible to irrigate land on the west part of the farm with water from the Gunnison-Fayette Canal. In 1963, a change application was filed with the State Engineer to permit 90 percent of the "AA" water to be diverted into the Dover Canal, which was to the west of the Roberts farm. Although Howard Roberts signed the change application, it is apparent that Brice actually procured the change in order to irrigate other lands on the west side of the farm which he owned.

Thus, after 1963, most of the "AA" water was mixed with "share water" owned by Howard Roberts in the Dover Canal, and used to irrigate land on the west side of the farm.

Howard married plaintiff in 1943, and lived with her until his death in 1973. In 1969, he attempted to procure plaintiff's signature to deeds conveying property to himself and Brice as joint tenants, but she refused. The deeds were executed without her signature, which resulted in this action to set them aside. In addition to these deeds, Howard conveyed to Brice his shares of water stock in the Dover Irrigation and Canal Company, and all of his interest in the "AA" water granted under the Cox decree. At the time of these conveyances in 1969, some of the "AA" water was being used on a 57-acre tract to which plaintiff's statutory dower attaches.

Defendant asserts the record contains sufficient evidence showing the "AA" water was appurtenant to the 120 acres deeded to him by his father in 1936. The trial court, by ruling the water was appurtenant to the 57-acre tract conveyed by Howard in 1969, apparently felt the water was not appurtenant to the 120-acre tract, and the rights to the water remained with Howard.

Plaintiff argues the 1969 deed to Brice conveying Howard's interest in the "AA" water is proof Howard did not convey the water with his 1936 deed to Brice. Brice states the 1969 deed simply relinquished Howard's life interest in the water, which he had reserved in the 1936 deed.

■ In Utah, a deed which conveys land to a grantee also conveys the right to use appurtenant water, unless expressly reserved.[2] Appurtenant water is the amount of water beneficially used on the land "be-

2. Sec. 73–1–11; *Stephens v. Burton*, Utah, 546 P.2d 240 (1976); *Thompson v. McKinney*, 91 Utah 89, 63 P.2d 1056 (1937); *Cortella v. Salt Lake City*, 93 Utah 236, 72 P.2d 630 (1937).

fore and at the time of the sale."[3] Was the "AA" water appurtenant to the 120 acres conveyed to Brice in 1936? We think so.

Brice testified that as long as he could remember, the "AA" water was used almost exclusively on the 120-acre tract. He understood it to be, and treated it as, his own, using it on the 120-acre tract until it was transferred to the Dover Canal in 1963. He also testified the "AA" water was not used on neighboring tracts of the Roberts farm which were irrigable from the Gunnison-Fayette Canal.

Defendant introduced into evidence pages of the Cox decree which established Howard Roberts' right to the "AA" water from the Gunnison-Fayette Canal. The water could not be used on the western portions of the Roberts farm because of the slope of the land, and, according to Brice and two other witnesses, it was not used on the land to the north of the 120-acre tract, because Howard Roberts had no ditches on that property. Thus, the only feasible use for the "AA" water was to irrigate the 120 acres conveyed to Brice, and some land immediately west of that tract.

Defendants also introduced copies of two plats of this land which were among those prepared by the State Engineer, George M. Bacon, in connection with the lengthy litigation giving rise to the Cox decree in 1936. The plats indicate what land was being irrigated and from what source, at the time of their compilation. They illustrate the 120 acres were being irrigated with water from the Gunnison-Fayette Canal. Although the date of the plats was not shown at trial, the evidence established these plats were based upon findings of Mr. Bacon, and we may take judicial notice that his term of office ran from 1925 until 1933.

It is clear the Cox decree did not create the water rights of the affected users, but simply established by decree the respective rights based on existing use as determined by the State Engineer. The Cox decree, by awarding Howard Roberts seven-tenths of a second-foot of water, gave him an adjudicated right to the same water he had been beneficially using. Thus, there is substantial evidence in the record to sustain the claim the "AA" water was appurtenant to the 120 acres conveyed by warranty deed to Brice in 1936.

We hold that the right to use the "AA" water was conveyed to Brice, along with the land, and that Howard Roberts retained only a life interest, which he conveyed to Brice by the 1969 deed.

Defendant's second contention is, the trial court erred in awarding plaintiff any sum representing her portion of the fair rental value of the lands conveyed to Brice, to which her statutory dower interest attaches. We agree.

Upon the death of Howard Roberts, in 1973, plaintiff moved to American Fork to live with her daughter. She has never returned to the house in Gunnison, nor has she ever requested access to the land. Brice Roberts has been in continued possession of the land, and testified the farm operated at a loss from the time of his father's death until the time of trial.

The parties both cite cases involving tenants in common; this is not such a case, since plaintiff's interest in the land is imposed by statute. As such, it is technically not the same as the interest of a tenant in common. However, the interest which plaintiff acquires by virtue of the statute does not give her greater rights than those of a tenant in common, in this respect; we may, then, properly consider Utah cases concerning tenancy in common.

The law is clear in Utah that one cotenant in possession is not liable to his cotenant for the fair rental value of the occupied property, except where he ousts the cotenant from possession, or uses the property so as to necessarily exclude the cotenant.[4] No evidence exists showing defendant prevented plaintiff from occupancy or use of the land to which her statutory

---

3. *Stephens v. Burton,* supra note 2.

4. *Heiselt v. Heiselt,* 10 Utah 2d 126, 349 P.2d 175 (1960); *Utah Oil Refining Co. v. Leigh,* 98 Utah 149, 96 P.2d 1100 (1940).

rights attached; the mere fact that Brice was the surviving joint tenant in possession of the land after his father's death does not mean plaintiff was thereby ousted from possession. It was error to award plaintiff any amount as her share of the fair rental value.

ELLETT, C. J., and WILKINS, J., concur.

HALL, Justice (concurring):

A cardinal rule of appellate review precludes this Court from substituting its judgment on factual issues for that of the trial court. However, that rule is subject to certain exceptions, one of which is that when the decision is not supported by reasonable and substantial evidence it is subject to reversal.

Consistent with the foregoing, a careful review of the record reveals that there is no reasonable evidence to support the conclusion that the "AA" water is appurtenant to the 57-acre tract in which plaintiff is entitled to a dower interest. Rather, there is substantial, compelling evidence to the contrary and that said water is in fact appurtenant to the 120-acre tract owned by defendant.

The so-called "Cox Decree" established that the "AA" water was to be diverted into the Gunnison Fayette Canal and used to irrigate lands under its system. The decree refers only to land on the canal system of the Gunnison Fayette Canal and water supplied thereby could never reach the 57-acre tract due to the topography of the area, i. e. the uphill lie of the land. This is emphasized by the fact that only the subsequent granting of the application for change of point of diversion made it possible to irrigate the 57-acre tract by use of the Dover Canal.

The water rights of Howard Roberts represented by the Decree passed to the defendant as grantee of the 120-acre tract to which they were clearly appurtenant. This is so because the rights thereto were not expressly reserved to the grantor.[1]

The fact that Howard Roberts made no express conveyance of the water rights, and that he filed the change application, is not to be considered as evidence of retention of ownership for it will not suffice for the necessary reservation of water rights in *express* terms as provided by statute.[2]

I am compelled, to conclude, as does the majority opinion, that the trial judge erred in finding the water to be appurtenant to the 57-acre tract instead of the 120-acre tract.

CROCKETT, J., concurs in the views expressed in the concurring opinion of HALL, J.

1. U.C.A., 1953, 73–1–11.

2. Ibid.