UTAH METAL & TUNNEL CO. v. GROESBECK, County Treasurer.

No. 3971.   Decided September 28, 1923.   (219 Pac. 248.)

1.   TAXATION—INVALIDITY OF TAX MUST BE DISTINCTLY ALLEGED TO RECOVER PAYMENT UNDER PROTEST.   To recover back a tax paid under protest, the complaint must distinctly allege facts rendering the tax illegal, since it is presumed valid.

2.   TAXATION—SITUS OF PROPERTY DETERMINES ITS TAXABILITY IN ANY CERTAIN COUNTY.   Under Const. art. 13, § 10, making property taxable within the territorial limits where owned or used, and Comp. Laws 1917, § 5875, requiring assessment in the county, city, etc., where situated, and section 5923, as amended by laws 1919, c. 114, providing for equal apportionment for property. situated in more than one county, the situs of property determines its taxability in any certain county.

3.   TAXATION—PERCOLATING WATERS COLLECTED BY MINING OPERATIONS HELD TAXABLE AS PERSONAL PROPERTY OF MINE OWNER.   Where mining operations caused diffused and percolating waters to be collected in a definite body, the corpus of the waters became personal property of the mine owner taxable as such.[1]

---

[1] Bear-Lake Co. v. Ogden, 8 Utah, 494, 33 Pac. 135.

4.  TAXATION—WATER DEVELOPED BY MINING OPERATIONS AND PIPED
    TO ANOTHER COUNTY TAXABLE THEREIN.  Where mining opera-
    tions caused percolating waters to gather in one place from
    which it was being piped out to another mining company in
    another county, such water was deemed a fixed object, as far
    as it could be identified, and taxable in the county into which
    it was being piped.

5.  TAXATION—PROPERTY TAXED BY TWO COUNTIES IS PRESUMED TO
    BE SITUATED IN BOTH.  Property taxed in two counties is pre-
    sumed to be situated in both, since taxes are presumed valid
    and to be supported by the necessary facts to make them so,
    in view of Const. art. 13, § 10, and Comp. Laws 1917, §§ 5875,
    5923, as amended by Laws 1919, c. 114, collectively requiring
    taxation of property at its situs.

6.  TAXATION—PRESUMPTION OF VALIDITY MUST BE OVERCOME BY
    SPECIFIC ALLEGATIONS.  In an action to recover taxes on mining
    property paid under protest, the presumption that the prop-
    erty was situated in the county was not overcome by a mere
    allegation that water was delivered to and received by mining
    company situated in another named county, since such pre-
    sumption must be overcome by clearly and positively alleging
    that the property was not subject to taxation in the named
    county.

7.  TAXATION—ASSESSMENT OF WATER RIGHTS SEPARATE FROM MIN-
    ING PROPERTY HELD CONSTITUTIONAL.  Const. art. 13, § 4, provid-
    ing for assessment of metalliferous mines by acreage and net
    proceeds and appurtenant property at full value, does not pre-
    vent assessment of water rights separately from the mine,
    since it does not prescribe any form of assessment, especially
    as the result to the mine owner is identical in either case.

8.  TAXATION—WATER BEING PIPED FROM ONE MINING COMPANY TO
    ANOTHER HELD ASSESSABLE TO FIRST MINE.  Where water col-
    lected in plaintiff's mine was being piped to another mining
    company in another county, under a contract, the water rights
    were assessable as appurtenant to the first mine not being
    appurtenant to the receiving mine since the receiving owner
    did not have title to the rights.

9.  WATERS AND WATER COURSES—APPURTENANCE TO OTHER PROPERTY.
    To make water rights appurtenant to other property, there
    must be unity of title and right to use in the same person.

10. TAXATION—WATER RIGHT OF MINE PIPING THE WATER TO AN-
    OTHER MINE HELD TAXABLE.  Under Const. art. 13, § 2, making
    all property not exempt subject to taxation according to its

value, and section 4, making the value of any surface use made
of mining property assessable at full value, water rights owned
by one mine and piped to another mine, whether appurtenant
to the first mine or mining property at all, are taxable.

11. TAXATION—ALLEGATION THAT WATER RIGHTS OF OTHER MINE
OWNERS ARE NOT ASSESSED SEPARATE FROM THEIR MINES HELD
NOT TO SHOW DISCRIMINATION.   In an action to recover taxes
paid on water rights under protest, complaint alleging that
similar rights were not assessed to other owners separately
and apart from their mines fails to show discrimination, since
it does not allege that other owners are not assessed and taxed
on such rights.

Appeal from District Court, Third District, Salt Lake
County; *A. R. Barnes,* Judge.

Action by the Utah Metal & Tunnel Company against E. J.
Groesbeck, as County Treasurer.   Judgment for defendant,
and plaintiff appeals.

AFFIRMED.

*Dey, Hoppaugh & Mark,* of Salt Lake City, for appellant.

*A. E. Moreton,* Co. Atty., and *Geo. G. Armstrong,* Asst. Co.
Atty., both of Salt Lake City, for respondent.

CHERRY, J.

This is an appeal from a judgment in favor of the defend-
ant, in an action to recover a tax paid under protest to de-
fendant as county treasurer of Salt Lake county.   The trial
court sustained a demurrer to the plaintiff's complaint, for
want of facts, and the plaintiff declining to plead further,
judgment was rendered dismissing the action.

The complaint formally alleges the following ultimate
facts:

The plaintiff is a corporation engaged in metal mining in
its properties situated in Bingham Canyon.   In driving a

tunnel in the process of its mining operations, a flow of water was developed in its mine. By an agreement with the prior appropriators of the waters of a natural stream called Middle Canyon creek, which is situated in Tooele county, the plaintiff discharges a portion of its developed waters in said creek, and in exchange diverts an equal quantity from the creek at a higher point. That for several years previous to 1915, the plaintiff used the waters obtained by the said exchange in connection with its own mining operations, but previous to the year 1921 discontinued such use, and by contracts with the Utah Copper Company agreed to and does furnish for hire the exchanged waters and the remainder of its developed waters, to the latter named company, who takes it from the plaintiff in Tooele county, and conducts it through its own pipe lines to Salt Lake county, where it uses the same for mining purposes.

That for the year 1921 the state board of equalization assessed the said water rights against the plaintiff for taxation in Salt Lake and Tooele counties in which they were described and valued in each county as follows: ''Water rights, dams and improvements (leased to Utah Copper Company), value of improvements $30,000.00.''

That subsequently a tax of $636 was levied thereon in Salt Lake county, and a tax of $525 in Tooele county, both of which the plaintiff paid under protest.

It is further alleged that the water rights are an integral part of plaintiff's mine, and that the plaintiff's mine and improvements thereon and the appurtenances thereto, other than said so-called ''water rights, dams and improvements,'' were separately assessed for the year 1921 to the plaintiff, and a tax of $3,824.02 levied thereon which was paid by the plaintiff.

It is further alleged ''that several other mining companies in the state of Utah have developed water in their mining operations and some of them sell the right to the use of said water, and that said board in assessing and taxing said mines treats said water rights as part of the mines and does not value or tax said water rights separate and apart from said mines,'' etc., for which reason the tax assessed against the

plaintiff is discriminatory, deprives it of the equal protection of the law and of its property without due process of law.

The plaintiff prays for judgment for the sum of $636, the amount of the tax paid under protest to the treasurer of Salt Lake county.

The appeal presents the single question of whether the complaint states a cause of action. The tax is presumed to be valid, and to state a cause of action to recover back the tax paid under protest the complaint must distinctly allege facts which render the tax illegal. 37 Cyc. 1188, 1189.

In this case the ownership and assessed valuation of the property assessed are not disputed. Neither is it claimed that the property was taxed otherwise than by the assessment in question. But it is contended that the tax collected was illegal because (1) the property assessed was not taxable to the plaintiff in Salt Lake county; (2) that it was not taxable separate from plaintiff's mine; (3) that if the water rights, etc., assessed were not an integral part of plaintiff's mine, they could not be taxed as an appurtenance to that mine, since if they were appurtenant to anything they were appurtenant to the mine of the Utah Copper Company, to whom they were furnished and by whom they were used; and (4) that the assessment was discriminatory because similar rights were not assessed to other owners separate and apart from their mines.

Whether or not the property assessed was subject to taxation in Salt Lake county depends upon its situs. By Constitution of Utah, art. 13, § 10, all property is taxable within the territorial limits where owned or used. Comp. Laws Utah 1917, § 5875, provides that all taxable property must be assessed in the county, city, town, or district in which it is situated, and section 5923, as amended by chapter 114, Laws Utah 1919, provides that the state board of equalization shall apportion the total assessment of property situated in more than one county, to the several counties through or into which such property extends, etc.

It is alleged that the plaintiff's mine is situated in Bingham Canyon, Utah; that the water in question was developed by

driving a tunnel in its mine; that at a point in Tooele county the water is delivered to Utah Copper Company, who takes it in its own pipe to Salt Lake county for use in the latter county. (The exchange with the prior appropriators of Middle Canyon creek is a mere incident for the convenience of the parties and does not affect the identity of the water owned by plaintiff.)

The legal attributes of water depend upon its form and position, and change as the form and position of the water changes. It may be granted that the waters in question, in their natural state, were diffused and percolating and were indistinguishable from and a part of the soil of the plaintiff's mine. But when the plaintiff by its tunnel **3** collected the waters in a definite body, they were severed from the soil and thereafter assumed a new form and position, "a habitation and a name," and took on a different legal aspect. When waters are reduced to possession and contained in artificial structures or works, the owner has the property in the corpus or body of the water, which then takes on the nature and character of personal property. *Bear Lake Co.* v. *Ogden*, 8 Utah, 494, 33 Pac. 135; 1 Wiel on Water Rights (3d Ed.) § 35, and cases cited.

The stream or body of water, although its particles are transient and ever changing, is deemed, for purposes of legal definition, a fixed object so long as it can thus be identified, and as such, according to the facts alleged in the complaint, it begins in the plaintiff's tunnel in Bingham Canyon, where it is developed and severed from the soil, and extends into Tooele county. If we have judicial knowledge **4** that Bingham Canyon is a geographical subdivision of Salt Lake county, the situation of the water in Salt Lake county for the purpose of supporting the tax levied is clear. But if any doubt exists as to judicial knowledge including that fact, the contention of the plaintiff that the property was not taxable in Salt Lake county must fail for other reasons.

The presumption of law in favor of the validity of the tax includes a presumption of the existence of the necessary facts to support the assessment. Accordingly, it is presumed that

the property in question was situated in both the counties where it was assessed, and that the total assessment was apportioned between them. To overcome this presumption, and to invalidate the tax on the ground that the property was not subject to taxation in Salt Lake county, it was necessary for the plaintiff to clearly and positively allege that the property was not situated in Salt Lake county. The **5, 6** complaint contains no such allegation. The allegation, in this respect, is that the water is delivered to and received by the Utah Copper Company at a point in Tooele county. The fact alleged is not inconsistent with the water being in Salt Lake county and extending to the place of delivery in Tooele county, and thereby so situated that it was taxable, by proper apportionment, in both counties.

It follows that the facts alleged were insufficient to show that the property assessed was not taxable to the plaintiff in Salt Lake county.

The second alleged ground of illegality is that the water rights, etc., cannot be assessed or taxed separate from plaintiff's mine under Constitution of Utah, art. 13, § 4, which is as follows:

"All metalliferous mines or mining claims, both placer and rock in place shall be assessed at $5.00 per acre, and in addition thereto at a value based on some multiple or submultiple of the net annual proceeds thereof. All other mines or mining claims and other valuable mineral deposits, including lands containing coal or hydrocarbons, shall be assessed at their full value. All machinery used in mining and all property or surface improvements upon or appurtenant to mines or mining claims, and the value of any surface use made of mining claims or mining property for other than mining purposes, shall be assessed at full value. The state board of equalization shall assess and tax all property herein enumerated, provided that the assessment of $5.00 per acre and the assessment of the value of any use other than for mining purposes shall be made as provided by law."

This constitutional provision does not prescribe any form of assessment. It merely provides that metalliferous mines shall be assessed at $5 per acre and in addition thereto at a value based upon some multiple of the net annual proceeds thereof and that all property upon or appurtenant **7** to mines and the value of any surface use made

of mining property for other than mining purposes shall be assessed at full value. Of what consequence is it to the owner whether the property not used by him for mining purposes is assessed separately or in conjunction with the mine itself? The form of assessment is wholly immaterial, and besides no particular form is required.

The next ground of illegality contended for is that the water rights, etc., could not be assessed as an appurtenance to the plaintiff's mine, because if they were appurtenant to anything they were appurtenant to the mine of the Utah Copper Company, who used them.

Under the facts alleged, the water rights owned by the plaintiff could not be appurtenant to the mine owned by the Utah Copper Company because the latter did not own the water rights. There must be a unity of title or right in the same person to both the superior estate and the appurtenance. *Meek* v. *Breckenridge,* 29 Ohio St. 642. But it was not essential to the validity of the tax that the water rights, etc., assessed should be an appurtenance at all. It was not assessed as such. The important question is whether it was property subject to taxation, and whether it was otherwise assessed and taxed. The property connected with mines and mining claims, which is made taxable by the Constitution at full value, is not limited to appurtenances, but includes "the value of any surface use made use of * * * mining property for other than mining purposes." But granting that the water rights, etc., assessed were not appurtenant to the plaintiff's mine, and assuming that they were not mining property at all within the meaning of the Constitution, it does not follow that they are free from taxation. Under the Constitution, art. 13, § 2, all property in the state not exempt by the laws of the United States or the Constitution of this state is subject to taxation in proportion to its value. The water rights, etc., assessed to the plaintiff, whether considered in connection with its mine or as separate and independent property, are in either case taxable in proportion to their value.

Finally, it is alleged that the tax is illegal and discriminatory because similar rights were not assessed to other owners

separate and apart from their mines. This allegation falls short of showing discrimination. It is not charged that other similar rights are not assessed and taxed, but that they are not taxed separate and apart from the mines of their owners. This does not amount to discrimination.

The property, upon which the tax sought to be recovered herein was levied, is owned by the plaintiff and according to the assessment is a substantial value. The plaintiff does not use the water rights for mining purposes, and the net proceeds of its mine are not augmented.by its aid. The plaintiff for hire lets the use of the water rights to the Utah Copper Company for mining purposes, whose net proceeds are diminished by the amount paid plaintiff for the use of the water. The property of the plaintiff in the water mentioned is maintained and protected by law, and under the Constitution and laws of this state should be taxed as other property. To permit the plaintiff to recover back the amount levied as taxes, and paid under protest, would be exempting this property wholly from taxation, resulting in a discrimination in favor of the plaintiff.

The complaint alleges no sufficient grounds for avoiding the tax, and the demurrer was properly sustained.

Judgment affirmed.

WEBER, C. J., and GIDEON, THURMAN, and FRICK, JJ., concur.