## CORTELLA v. SALT LAKE CITY.

No. 5570.   Decided October 25, 1937.   (72 P. [2d] 630.)

Rehearing Denied February 11, 1938.

238

*Fisher Harris,* City Atty., and *E. R. Christensen* and *Gerald Irvine,* Asst. City Attys., all of Salt Lake City, for appellant.

*Ray Van Cott,* of Salt Lake City, for respondent.

HANSON, Justice.

An action was commenced in the district court of Salt Lake county by Alex Cortella against Salt Lake City to recover damages alleged to have been sustained by said Cortella because of the failure of the city to furnish him water for irrigation purposes. After the suit was filed, Cortella died and the administrator of his estate was substituted as plaintiff. The administrator filed an amended complaint to which the city demurred generally and specially. The demurrer was

overruled. The city answered by way of a general denial. A trial was had to the court without a jury and resulted in a judgment for plaintiff. The defendant city has appealed from that judgment and relies upon three propositions for a reversal of the judgment. They are: (1) The general demurrer to plaintiff's amended complaint should have been sustained; (2) the findings of fact, even if supported by some evidence, do not sustain any liability of defendant to plaintiff; and (3) the facts essential to liability were not established by any evidence.

The amended complaint, so far as is material here, alleged in substance as follows: That Cortella was, at the time of his death and for more than twenty years prior thereto had been, the owner of the south half of lot 15, block 7, 5-acre plat A, Big Field survey, in Salt Lake City; that, during 1930 and 1931, he was the lessee of the 'north half of said lot; that during the year 1931 he had planted certain crops on the land he owned as well as on the leased land, specifying in detail the crops and area planted to each crop; that for at least 20 years said lands have been highly productive when irrigated; that the irrigation season for more than 20 years has been from April 1 to October 1 of each year; that it has been necessary during all of said time to irrigate said lands when planted into crops at least once a week in order to maintain said crops in a good healthy growing and flourishing condition; that the crops planted by him were in good healthy condition and would have matured but for the neglect and failure of the defendant to furnish and deliver irrigation water therefor; that in a certain equity action in the district court of Salt Lake county all the water rights of Parley's Canyon Creek were settled and adjudicated by a decree entered May 2, 1912, by which decree it was adjudged that a lateral of said creek known as the Turnbow ditch was, and since 1850 has been, entitled to 547/2078.91 of 83.7 per centum of the waters and flow of said creek for irrigation of 547 acres of land, subject to exchange agreement made and entered into by and between plaintiff's grantors and prede-

cessors in interest and others, dated June 25, 1888, a copy of which is annexed to and made a part of the complaint; that said decree has been, ever since its entry, and now is, in full force and effect; that plaintiff is informed and believes that the lands above described have been ever since 1850 and now are included within and form a part of said 547 acres under the Turnbow ditch; that by virtue of the terms of said exchange agreement and the action taken by the board provided for in said agreement, as agent of the parties, it became the duty of defendant to deliver at the intake of the Turnbow ditch where it meets and opens into the channel of said creek 5.11 second feet of water for the period from May 13 to August 15, 1931, and 1.43 second feet of water from August 15 to October 1, 1931; that copies of the report and official action of said board are attached to and made a part of the complaint; that during the irrigation season of 1931 it was the practice of the water users under the Turnbow ditch to divide the stream into two equal parts among the users thereof so that each user might have half the stream for a specified number of hours allotted by the users; that, pursuant to said practice, Cortella was entitled, during the irrigation season of 1931, to half the Turnbow ditch stream for a period of 12 hours each week during the season; that said water to which Cortella was entitled under the allotment and practice was necessary and would have been sufficient to properly irrigate his lands and to have properly matured the crops thereof; that defendant failed and neglected to deliver at the intake of the Turnbow ditch or otherwise, or at all, the quantities of water adjudicated and allotted to it by said board or any substantial part thereof during the time from June 1 to October 1, 1931; that as a consequence Cortella was unable to obtain any water out of the Turnbow ditch during said period of time, and his crops wholly perished to his loss in the sum of $1,500. Presentation to and rejection by the city commissioners of a verified claim is also alleged.

After reciting that the first parties to said exchange agreement are the owners of primary rights to the waters of Parley's Canyon creek and the city owns the Jordan and Salt Lake City Canal and that the city desires to exchange canal water from said canal for the creek water held by the first parties, to which exchange the first parties have agreed, the agreement then provides:

"It is hereby agreed as follows: The parties of the first part whose names are signed hereto agree to exchange the waters of the Parley's Canyon Creek to which they are entitled for an equivalent quantity of water from the Jordan and Salt Lake City Canal down to the time when the primary rights exhaust the whole of said creek for irrigation purposes (and for the quantity of water to be furnished after said last named time as next hereinafter further agreed); and to permit, allow and authorize said party of the second part to take said waters of the Parley's Canyon Creek at any point it may choose and devote the same to the use and benefit of the inhabitants of Salt Lake City.

"And it is further agreed that each season when the period arrives that the water of the said Parley's Canyon Creek are at their normal stage, that is to say, when they are at the stage, when the owners of the primary rights therein are entitled to the whole of said stream for irrigation purposes, then the party of the second part shall have the waters of said creek measured at the place where it takes said waters from said Parley's Canyon Creek and the board hereinafter provided for shall decide as to such time, and it hereby guarantees to furnish to the parties of the first part from and after the date of such measurement and until the 15th day of August, a continuous supply of water from said canal equal to the portion of said creek owned by the parties of the first part at the time of such measurement and at the last named date the waters of said creek shall be measured again, as aforesaid, and the party of the second part shall furnish to the parties of the first part, from and after said measurement, a continuous supply of water from said canal equal to the portion of said creek owned by them at the time said last measurement during the remainder of the season.

"The second party agrees to maintain all existing rights of the parties of the first part to the waters of the said Parley's Canyon Creek, and to keep in repair the said Jordan and Salt Lake City Canal, and by its agent jointly with the agent of the parties of the first part, and at the expense of the former, turn out from the said canal the proper portion of the water due to the parties of the first part on the

exchange aforesaid, and also to construct the necessary ditch or ditches, head gates and dams to take out of said waters of the said canal and Parley's Canyon Creek, and provide for rights of way for the same, all at its own cost and expense, and without cost or expense to the parties of the first part.

"If at any time the party of the second part, through any cause whatever, fail to supply to the parties of the first part the said quantity of water from said canal, it is expressly understood and agreed that said parties of the first part shall be restored to the portions of Parley's Canyon Creek appropriated and used by the party of the second part, under the terms of this agreement, * * * but their (first parties') agent may at once give notice to the agent of the party of the second part of the said failure of the said party to furnish the said water * * * and if such default and failure on the part of said party of the second part shall continue for a period of twelve hours then said agent for said first parties may at once proceed to turn said waters of said creek into their original channel, and place the same to the use of the said parties of the first part, and all expense and damages caused by the failure to furnish said canal waters as aforesaid, shall be borne by the said party of the second part."

The agreement then provides that, though the first parties retake the creek water because of the city's failure to furnish canal water, the city again may have the creek water by furnishing sufficient canal water to make up for any delays in irrigation caused by said default, provided that, if such default continues for a period of six months, then the agreement shall be null and void.

By March 1st in each year first parties are to select an agent and the city is to select an agent. A third person is to be selected by the two agents and the three are to constitute a board and shall decide all questions that arise under the agreement. It is agreed that in any part of the year when canal water is not furnished first parties are entitled to the waters of Parley's Canyon creek. It is further provided that "This agreement shall be perpetual if the covenants and conditions herein expressed are kept and complied with."

The action taken by the board, provided for in the agreement, with reference to the determination of the amount of

water to which the Turnbow ditch water users would be entitled for the year 1931, made a part of the complaint, shows that the board met on May 16, 1931, and determined that the flow of Parley's Canyon creek reached the primary stage 23.21 second feet on May 13, 1931. The minutes of the meeting recite:

"Taking the primary flow of 23.21 second feet, the exchange ditches are entitled to water until August 15th, 1931, as follows:

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Rockwood Ditch | 51.91 acres | | 2% | of | flow | of | creek | 0.45 | sec. | ft. |
| Kennedy Ditch | 545 | " | 22% | " | " | " | " | 5.11 | " | " |
| South Sanders Ditch | 232 | " | 9.36% | " | " | " | " | 2.17 | " | " |
| North Sanders " | 440 | " | 17.74% | " | " | " | " | 4.12 | " | " |
| Sperry Ditch | 263 | " | 10.6% | " | " | " | " | 2.46 | " | " |
| Turnbow Ditch | 547 | " | 22% | " | " | " | " | 5.11 | " | " |
| Total | 2078.91 | " | 83.7% | " | " | " | " | 19.43 | " | " " |

The minutes of the meeting of the board held August 21, 1931, also attached to the complaint, showed the normal flow of Parley's Canyon creek on August 15, 1931, was 6.5 second feet and an apportionment thereof to the same ditches in the same proportion as shown above, resulting in the Turnbow Ditch being allotted 1.43 second feet.

The findings of fact made by the trial court follow substantially the allegations of fact contained in the complaint and set out verbatim the exchange agreement and the minutes of the board appointed under said agreement. It is not necessary, therefore, to quote or state the substance of the findings of fact.

The defendant contends that the complaint is fatally defective and that the findings of fact fail to sustain the judgment because no facts are alleged on the one hand, or found on the other, to show any right in Cortella to sue on the exchange agreement for a breach thereof.

There is no allegation or finding that Cortella was a party to the exchange agreement nor is there any direct allegation or finding that any party to said agreement ever transferred to Cortella any interest or right under said agreement.

There is no direct allegation or finding of fact that a right to the use of water under said exchange agreement was appurtenant to the land owned and leased by Cortella. Defendant contends that the complaint does not allege that the right to use Parley's Canyon creek water, prior to the exchange agreement, was an appurtenance to the land described, and that even if that water right were appurtenant the right to canal water given in exchange under the agreement would not be appurtenant.

Obviously, if the original water right and the water right given in exchange under the agreement were appurtenances to the land in question, such a showing would have a material bearing upon plaintiff's right to sue on the exchange agreement. That might be one of the sources through which plaintiff could establish privity with said agreement and so be able to maintain his action for damages in this case. As a matter of fact plaintiff does rely on having alleged and shown a right to sue on the exchange agreement because of having acquired land to which he claims the right to use the creek water and the right to use water from the defendant's canal were appurtenant. We shall examine, therefore, this phase of the case.

The complaint alleges, and the court found, that by a decree of court dated May 2, 1912, it was adjudicated that the Turnbow ditch was entitled to a certain portion of the waters of Parley's Canyon creek to irrigate 547 acres of land covered by said ditch and that this right had existed since 1850, such right being subject to the exchange agreement entered into by and between plaintiff's grantors and predecessors in interest, and others, and the defendant. It is further alleged and found that plaintiff's lands described in the complaint have always been, since 1850, and still are, included within and form a part of said 547 acres under said Turnbow ditch. The exchange agreement, to which defendant is a party, also discloses that the water users, parties thereto, were the owners of primary rights to the water of Parley's Canyon creek, and the water of said

creek accruing to them by virtue of such rights was to be exchanged for canal water to be furnished by defendant. The agreement also discloses that water users, parties thereto, are individuals rather than corporations so that they did not derive their interests in the creek water through ownership of corporate stock. We think that from such allegations and findings the inference properly arises that the water rights to which this 547 acres were entitled were appurtenant to the lands comprising that area. In the case of *Thompson* v. *McKinney* (Utah) 63 P. (2d) 1056, we approved the rule that, where a water right has been used to irrigate a certain tract for several years and such water is necessary to the beneficial enjoyment of such land and is not represented by stock in any corporation, such water right becomes an appurtenance to said land and is a part of the real estate and passes therewith.

By the exchange agreement it was intended that the lands theretofore irrigated from the creek should receive irrigation water from the defendant's canal in every respect the same as if they were to continue to receive creek water. By its agreement the defendant was obligated to protect and preserve the landowner's rights in the water of Parleys Canyon creek; on default the creek water should revert back to the landowners. The water to be received from the city on the exchange was to be used for irrigation purposes and so could have no utility except in connection with the cropping of land. The agreement, by its terms, is to continue perpetually. The practical result of the agreement would be to substitute one water right for another. It would seem that something more was intended and created by this agreement than a mere contractual obligation on the part of the city to supply a certain amount of canal water. The rights of the water users under the contract were for the benefit of their lands. We think that a property right or easement to take water for irrigation from the city's canal to be used on the lands formerly irrigated by water from the creek was created for the benefit of such

lands. *Relovich* v. *Stuart*, 211 Cal. 422, 295 P. 819; *Ball* v. *Rio Grande Canal Co.* (Tex. Civ. App.) 256 S. W. 678; *Consolidated Juchem Ditch & Reservoir Co.* v. *Old*, 62 Colo. 470, 163 P. 78. Such right would be in the nature of an appurtenance to the lands of said water users. *Stanislaus Water Co.* v. *Bachman*, 152 Cal. 716, 93 P. 858, 15 L. R. A. (N. S.) 359. Under our statute, section 100-1-11, R. S. Utah 1933, a conveyance of land passes an appurtenant water right unless the same is expressly reserved. This has been the statutory rule at least as far back as 1888. See *Snyder* v. *Murdock*, 20 Utah 419, 59 P. 91; Comp. Laws Utah 1888, § 2783; R. S. Utah 1898, § 1281.

The defendant argues that the water in the canal is personal property and so could not become appurtenant to the lands on which it was used and cites *Bear Lake & River Water Works & Irr. Co.* v. *Ogden City*, 8 Utah 494, 33 P. 135; *George* v. *Robison*, 23 Utah 79, 63 P. 819; *Utah Metal & Tunnel Co.* v. *Groesbeck*, 62 Utah 251, 219 P. 248. We do not deem it necessary to determine whether the corpus of the water in the city's canal is personalty or realty. We are not here dealing with water as personal property but with the right to the use of water created and bestowed by the exchange agreement for the benefit of certain lands. This involves a right to the flow of water in and from the city's canal to be used upon said lands. Such a right is treated as an incorporeal hereditament as distinguished from the corpus of the water, and is real property. 2 Kinney on Irrigation and Water Rights, pp. 1328-1333; *Madison* v. *McNeal*, 171 Wash. 669, 19 P. (2d) 97. We are satisfied the exchange agreement created a right to take water from the city's canal for irrigation purposes and that that right is to be treated as an appurtenance to the lands involved in the exchange of water rights. It is not the water in the canal that becomes an appurtenance; it is the right to take and use that water which sustains that relation.

The difficulty with plaintiff's complaint and with the trial court's findings of fact is that there are no direct allega-

tions in the one case nor findings of fact in the other showing that plaintiff has succeeded to water rights that had become appurtenant to the lands he owned and leased. It would not be sufficient to allege present ownership of a tract of land to which water had been appurtenant at some time in the past in order to show present ownership of such water right. By the terms of section 100-1-11, R. S. 1933, an appurtenant water right may be sold and conveyed separate from the land. The case of *Moyle* v. *Salt Lake City*, 50 Utah 357, 167 P. 660, involved what appears to be the same exchange agreement now before us. One of the landowners who was entitled to water from Parley's Canyon creek, and who had become a party to the exchange agreement, wanted Salt Lake City to deliver the water to which she was entitled to a different diversion point so as to irrigate a different tract of ground, the tract on which the water had been used theretofore having become a part of the city and so built up as not to be suitable for farming purposes. The court held that the water could be changed to the new location where it could be used, there being no showing of any injury to the city. Accordingly, in order to state a cause of action on the one hand, and findings of fact sufficient to sustain a judgment on the other hand, we think it should appear from the allegations of the complaint and from the findings of fact now before us that the rights acquired by the original owner under the exchange agreement had not been sold or otherwise transferred separate from the land or transferred from the land here involved to some other lands, whether within or without the 547-acre tract. The allegations of the complaint and the findings of fact that bear upon the point being discussed may be summarized as follows: Cortella has owned the south half of said lot 15 for more than twenty years and leased the north half during 1930 and 1931; that said lands are productive if irrigated, and the irrigation season during said twenty years has been from April 1st to October 1st of each year; that the decree of May 2, 1912, decreed a certain

named fraction of the water of Parley's Canyon creek to the Turnbow ditch to irrigate 547 acres of land covered by the ditch, which right has continued since 1850, subject to the exchange agreement between plaintiff's grantors and predecessors in interest and others and the defendant city dated June 25, 1888; that the lands here involved have been, since 1850, and now are, included within and form a part of said 547 acres under said Turnbow ditch; that under the exchange agreement the Turnbow ditch was determined to be entitled to a certain amount of water for the year 1931, as determined by the board provided by said agreement; that, according to the practice of the users under the Turnbow ditch, Cortella became entitled in 1931 to a weekly water turn of twelve hours each. We think the fair inference from such allegations and findings would be that Cortella succeeded to the rights originally created by the exchange agreement in favor of the lands in question and showed a right in him to sue upon that contract for the breach thereof. It must be remembered that the question being discussed arises upon a general demurrer, and in disposing of the question we are concerned only with matters of substance and not of form. The test of the sufficiency of a complaint to withstand a general demurrer has been stated in *Jackson* v. *Harries,* 65 Utah 282, 283, 236 P. 234, 236, as follows: "Can a complete cause of action be proved under the allegations without violating the rules of evidence relating to relevancy," etc. While the complaint is defective in form, we think it contains sufficient allegations, as above summarized, to permit proof of the source of plaintiff's right to sue upon the exchange agreement; namely, a right to sue by virtue of having succeeded to the ownership of and right to use land to which a right to obtain water under the agreement had attached. Likewise, whether the findings of fact contain sufficient findings to support a judgment must be determined by their substance and the legitimate inferences that may be drawn therefrom rather than by their form.

The finding that the decreed rights to Parley's Canyon creek water were subject to "that certain exchange agreement made and entered into by and between plaintiff's grantors and predecessors in interest, et al.," and defendant city was more than a mere description of the agreement, intended to identify the agreement referred to in the decree. The agreement is set out in full in the complaint and in the findings. While not a direct finding on the subject we think it serves to find that plaintiff's grantors and predecessors in interest were parties to the agreement. This, in connection with the other allegations and findings, above summarized, would support the conclusion that plaintiff had succeeded by virtue of his interest in the land involved to a present water right based upon the exchange agreement. It is contended by defendant that the words "plaintiff's grantors and predecessors in interest" are meaningless as it is not stated what property or right was intended to be referred to as having come to rest in the plaintiff through such grantors and predecessors in interest. From the context of the whole of the allegations and findings we think it fairly inferable that the language "plaintiff's grantors and predecessors in interest" has reference to the grantors and predecessors in interest of the land described.

While the questions so far discussed are not without difficulty and could have been entirely eliminated by proper allegations and findings, assuming, of course, that such allegations and findings are supported by the evidence, we feel that the complaint, when construed as a whole, states a right to sue upon the exchange agreement and that the findings of fact are sufficient to support the conclusion that plaintiff is entitled to sue upon said agreement. The evidence upon this phase of the case will be discussed later.

Defendant next urges that neither the complaint nor the findings show any breach of the contract upon which plaintiff can rely. By the terms of the exchange agreement, defendant is obligated to turn from its canal the proper portion of water to which the water users, signers of that agreement,

are entitled. It is argued that in order to show a breach of that duty it would be necessary to allege and find the portion of water which would be due to the water users under the agreement and a failure to deliver that portion; that an allegation and finding that defendant did not deliver to the Turnbow ditch all of the water to which that ditch was entitled would avail nothing as defendant, under the agreement, was not obligated to deliver to the Turnbow ditch all water entitled to be diverted by that ditch; that defendant was obligated to turn out of its canal only that quantity of water that it received from Parley's Canyon creek as the share formerly owned by the signers of the exchange agreement, and, for all that appears in the complaint or findings, defendant may have delivered that quantity or more. It is not alleged or found by express language that all persons entitled to water from said creek through the Turnbow ditch signed the exchange agreement. The allegations and findings on this question state: (1) That, under the terms of said agreement and pursuant to the official action taken by the board provided for by said agreement, it became the duty of the defendant to deliver at the intake of the Turnbow ditch, 5.11 second feet of water from May 13 to August 15, 1931, and 1.43 second feet from August 15 to October 1, 1931, the minute record of such determination being made a part of the complaint and findings, and (2) that defendant disregarded that duty, and failed to deliver at said intake the water allotted by the board or any substantial part thereof from June 1 to October 1, 1931.

We think that the only fair construction that can be given such language would be that the quantities of water thus allotted by the board to the Turnbow ditch represented the quantities which the defendant was obligated under its contract to deliver for the use of those who were entitled to use the water to be furnished under that contract. We cannot see how such language can be construed to mean that the quantities of water allotted to the Turnbow ditch by the board included the water to which persons still retaining

their creek water, and, having no rights under the exchange agreement, would be entitled to receive from the creek. Neither the contract nor the board had anything to do with the rights of those not parties to the contract. Under the contract the board was to determine when the creek flow reached the primary stage and when that was determined the city guaranteed to deliver a continuous supply of water to the other parties to the contract equal to their portion of the creek water so measured to continue until August 15th when a new measurement was to be made. Nor do we think that the minutes of the official action of the board disclose any different result. The board determined that the flow of Parley's Canyon creek reached the primary stage of 23.21 second feet on May 13, 1931. Then the minutes say: "Taking the primary flow of 23.21 second feet, the exchange ditches are entitled to water until August 15th, 1931, as follows: Turnbow, 547 acres, 22% of flow of creek, 5.11 second feet." The minutes name other ditches totaling in all, including the Turnbow ditch, 2,078.91 acres, 83.7 per cent of the flow of creek, 19.43 second feet. It is alleged and found that the decree of May 2, 1912, decreed 547/2078.91 of 83.7 per cent of the primary flow of Parley's Canyon creek to the Turnbow ditch. The board allotted to the Turnbow ditch and said that ditch was entitled to receive until August 15, 1931, that very fractional amount named in the decree. Obviously, the board was not finding that the primary flow in Parley's Canyon creek to which the Turnbow ditch would be entitled from May 13 to August 15, 1931, in the absence of the exchange agreement, would be 5.11 second feet. There would be no way of determining that flow in advance. As a matter of fact the flow in Parley's Canyon creek so diminished that on August 15, 1931, the total primary flow in the creek was then only 6.5 second feet. The language of the minutes is explicit. It says that the exchange ditches are entitled from May 13 to August 15, 1931, to the quantities of water stated. It does not state that said ditches are entitled to receive such portion of the quantities named

as would be disclosed by a subsequent calculation of the amounts which the signers of the exchange agreement, or their successors, would be entitled to receive from the creek were it not for such agreement. The board, apparently, was not fixing a basis from which the amount of water to be delivered by the defendant under the exchange agreement was to be determined. It went further and gave the amounts of water to which the exchange ditches would be entitled until August 15, 1931, and in its second meeting, until October 1, 1931.

Certainly, the contract did not contemplate that the board should determine, nor would the board have any right to determine, the total quantity of water to which the Turnbow ditch would be entitled under its primary rights from Parley's Canyon creek unless all persons entitled to receive water under that ditch were bound by the exchange effected by the contract. Since the amount determined by the board constituted the same quantity as was decreed to the Turnbow ditch in 1912, it may be assumed that all users under the Turnbow ditch had exchanged their creek water for defendant's canal water. It will also be noticed that it is alleged and found that the decree of 1912 states that the Turnbow ditch is entitled to a certain fractional part of the primary flow of Parley's Canyon creek subject to the exchange agreement. It would be inferred from such language that the entire rights of said ditch are subject to the exchange agreement as it does not attempt to limit in anywise the extent to which the rights of such ditch are subject to said agreement. Obviously, if some part of the rights under said ditch were not subject to the agreement, the decree should not make such rights subject thereto and would except the same by appropriate language. We think the complaint alleges, and the findings find, a breach of its contract by the defendant in failing to deliver the water which its agreement obligated it to deliver in 1931.

Defendant also contends that there is no allegation or finding of a breach of its contract because there is no alle-

gation or finding that there was not sufficient water in the Jordan and Salt Lake Canal to satisfy the rights of the parties to the exchange agreement. It is argued that since the agreement provided that the city, "by its agents, jointly with the agent of the parties of the first part," shall "turn out from said canal the proper portion due to the parties of the first part on the exchange agreement," it was the duty of the agent of the first parties to join in turning out the canal water, and, if it was not turned out, he should have made demand or turned the water out himself. It appears from the complaint and findings that the irrigation season commenced about April 1, 1931, and that the owners of primary rights in Parley's Canyon creek became entitled to the entire flow of the creek May 13, 1931. It is also alleged and found that the defendant's failure to deliver canal water commenced about June 1, 1931. It appears therefore that the water in a proper amount was originally turned out of the canal and continued to be turned out for some time. Then the city, for some reason, failed to continue delivering the water. The agreement provides that should the city fail to supply to the first parties "the said quantity of water from its canal" first parties shall be restored to their creek water. If such failure shall continue for twelve hours after notice by first parties' agent, then such agent may turn the waters of the creek into its original channel for use by first parties. Nowhere is such agent given the right to take water from the canal upon a failure of the city to furnish it. Under the contract the city could bring the contract to an absolute termination by simply withholding its canal water for a period of six months. Such provision entirely negatives any right in first parties, or their agent, to compel delivery of canal water by going to the canal and taking water therefrom over the protests of the city, and it negatives any duty on their part to take such action upon a failure of the city to turn out its canal water. Under such stipulations it would be absurd to allow the city to defend its failure to comply with its agreement to deliver

its canal water by showing that first parties' agent had not himself turned out the water or had not demanded it turned out. We think, in view of the language of the contract as a whole, that the stipulation relied upon by defendant was intended more as a safeguard to first parties so that they would be assured of receiving their proper portion of water and was not intended to relieve the city of its duty to turn out such water in the absence of such agent or of a demand from such agent so long as it took the creek water under the agreement.

While under the agreement the first parties could retake their creek water after a failure by the city for twelve hours to deliver canal water, we do not think that was intended as their exclusive remedy. Circumstances might exist where a resort to such a remedy could not be made without an entire loss of crops. A twelve-hour wait would have to expire after the notice of default had been given before the creek water could be resorted to. The water would then have to be run down the creek channel. If the creek bed were dry or its channel so disturbed without first parties' fault so as to delay and obstruct the flow of water therein, the time so consumed might be fatal to growing crops. Still, under the agreement, such a retaking of the creek water would be subject to the city's right to take it back again on furnishing canal water to make up the delays in irrigation occasioned by the default. Such restoration by the city without compensation for damages seems to be all that is contemplated by the agreement. We think it clear that the provision for retaking the creek water was for the benefit of the first parties to be exercised by them at their option, and that a failure to proceed thereunder cannot be relied upon by defendant to defeat plaintiff's action.

The complaint and the findings involve and disclose another theory which should be considered in disposing of the question of plaintiff's right to sue based upon the exchange agreement. It is alleged, and found, that under and pursuant to said exchange agreement and the official action of the board created by said agreement, it be-

came and was the duty of the city to deliver 5.11 second feet of water at the intake of the Turnbow ditch from May 13 to August 15, 1931, and 1.43 second feet from August 15 to October 1, 1931. The official action of that board has already been discussed, from which it appears, as there explained, the Turnbow ditch was entitled to receive the above-mentioned quantities of water from defendant's canal during the times stated. It is also alleged, and found, that according to the practice of the water users the stream was to be divided, and that for the year 1931 Cortella became and was entitled to use, for the irrigation of his lands, one-half of the flow of the waters to which said ditch was entitled for twelve hours each week during the season. We think that such allegations and findings show a right in Cortella to use the amount of water so allotted to his lands by the water users, irrespective of whether there were any water rights appurtenant to Cortella's said land. Such allegations amount to a statement of ownership of the water so allotted and could be supported by proof of ownership acquired by a deed passing appurtenances, or by purchase, gift, or acquisition by other lawful means. *Garbarino* v. *Noce,* 181 Cal. 125, 183 P. 532, 6 A. L. R. 1433. As between the water users under said ditch and the defendant, the former could arrange among themselves as to what persons and upon what lands the water which defendant was obligated to deliver should be distributed, so long as it did not injure defendant or increase its burden. Any one of those entitled to water under said agreement could sell or make a gift to Cortella of the water he would be entitled to receive, and Cortella would, in such case, be entitled to said water and the city would be obligated to deliver it under its agreement. Especially is this true where it is alleged and found that Cortella's lands were a part of the 547 acres under said Turnbow ditch and to which the board, by its action, allotted the 5.11 and 1.43 second feet, respectively. If it is a fact that, according to the practice or action of the water users for the year 1931, Cortella became and was entitled to a half stream for twelve hours each

week out of the water allotted by the board to the Turnbow ditch from the Jordan and Salt Lake Canal in its official action under said agreement, then it is immaterial whether that right arose as an appurtenance to Cortella's lands or resulted from a temporary arrangement which he made with the Turnbow ditch water users covering only the year 1931, so far as the defendant's liability for a failure to deliver that water is concerned. We think the complaint is sufficient, as against a general demurrer, on this theory, and, likewise, that the findings of fact are sufficient on this theory to sustain a conclusion of liability on the part of the defendant.

We come now to defendant's final contention; namely, the facts essential to liability were not established by any evidence. It is clear that plaintiff, in order to recover in this action, must show a right to sue upon the contract pleaded, in addition to showing a failure of the defendant to deliver its canal water as contemplated by said contract. While we have stated that the complaint, taken as a whole, stated sufficient facts to show a right in plaintiff to sue on the contract under claim of a water right appurtenant to his lands, and also under a claim of right to use water during 1931 by arrangement with the Turnbow ditch water users, we are of the opinion that the evidence does not sustain either claim.

The evidence shows that John Priest, whose true name is John Preece, became the owner of plaintiff's land in 1874. He died in 1887. His estate was distributed in 1895 to his two widows and ten children. One of his children was named Nephi Preece. The exchange agreement is dated June 25, 1888. One of the signers thereon is Nephi Preece. There is no evidence that such signer was the Nephi Preece, son of John Preece, who became one of the executors of the estate of John Preece, except such inference as would arise from identity of names and the fact as testified to by Joseph H. Preece, a brother of Nephi Preece, that the latter owned no land under the Turnbow ditch at the time the exchange agreement was signed. There is nothing in the record to

show for whom or in what capacity Nephi Preece signed the agreement, although there are several other signers whose representative capacity as administrator, executor, or guardian is shown. There is no evidence that the estate of John Preece was intended to be made a party to said agreement or that anyone authorized to sign for that estate did in fact sign. Nor is there any evidence to show that Cortella ever used, or claimed the right to use, upon the lands owned and leased by him, any water from the Turnbow ditch that had been supplied to that ditch by the defendant under said exchange agreement prior to 1931. That he did use water on the half of the lot which he owned since he became the owner thereof is established.

There is also evidence that water had been used on all the land from the time the agreement was signed, although Joseph H. Preece testified no water was used on said land in the years 1889 and 1890, and he had no recollection of any being used thereon prior to 1888. But the source of the water used upon this land is not disclosed. For aught that appears in the record, it may have come to the Turnbow ditch as a part of the primary flow of Parley's Canyon creek which the defendant did not secure under the exchange agreement, or it may have come from some other source independent of the defendant's canal water. The evidence does not establish that this 5-acre track was a part of the 547 acres under the Turnbow ditch referred to in the decree of 1912 and in the allotment made by the board in May, 1931. An adjudication of water rights in Parley's Canyon creek, dated December 27, 1880, by certain commissioners acting under an act of the Territorial Legislature, approved February 20, 1880, was introduced in evidence. This showed that the land under the Turnbow ditch totaled 547 acres, and showed John Preece had a water right under that ditch for twenty years. We have been unable to find any evidence which would establish that the 5 acres owned and controlled by plaintiff was then a part of that 20 acres or that said 5-acre tract is a part of the 547 acres entitled to water under the Turnbow ditch.

The evidence, therefore, does not show that the defendant's canal water was ever used, prior to 1931, to irrigate said 5-acre tract. That water was used to irrigate it prior to 1931 is conceded, but that it came from the defendant's canal or that there was a right to have it come from that canal by virtue of the exchange agreement is not established The Preece estate held the land until 1895, when it was distributed to the Preece heirs and such heirs held the land in undivided ownership until 1903, when it was sold. Cortella acquired it in 1907. It would seem therefore that evidence could be obtained from which the nature and source of the water used to irrigate this land in the past could be definitely established. For Cortella to maintain an action for breach of the agreement, he must show that he is in privity with it, for admittedly he was not a party to it. *Diggs* v. *Pacific Gas & Electric Co.*, 57 Cal. App. 57, 206 P. 765. Before Cortella can rely on ownership of a water right as an appurtenance to his land, he must first show that such right was an appurtenance, one essential of which is that the water right was in fact used upon said land. Whether a water right is an appurtenance involves a question of fact and depends upon the circumstances surrounding each particular case. 2 Kinney on Irrigation and Water Rights, pp. 1803, 1804. In the instant case a mere showing that prior to the execution of the exchange agreement the land then owned by John Preece's estate had appurtenant to it a water right in Parley's Canyon creek would not establish in Cortella ownership of any right under the exchange agreement as having come to him as an appurtenance to the land which he acquired by mesne conveyances from the Preece heirs. A right under that agreement would not attach to said lands as an appurtenance unless and until there was privity of contract between the owner of the land and the defendant. There is no evidence that any of Cortella's grantors and predecessors in interest to the land here involved signed or by any other means became a party to said agreement, except that Nephi Preece, if it be assumed he was the Nephi Preece who signed

the agreement and who later succeeded to a one-tenth interest in the land, signed it. There is no evidence to show how much water would come to Cortella under the exchange agreement through Nephi Preece alone, and the former is not relying on that source as the origin or basis of his rights under the agreement. We think the evidence is wholly insufficient to show any liability on the part of defendant to plaintiff upon the theory that the ownership of the land in question carried with it as an appurtenance a right to receive and use water under the exchange agreement.

While it is alleged and found that Cortella became entitled to take and use a half stream for twelve hours once each week, under the practice adopted by the water users for the year 1931, there is no evidence to sustain such allegation or finding. The plaintiff administrator of Cortella's estate testified he did not know how the water was regulated among the users in 1931. The plaintiff sought to show something concerning the division of water among the water users for that year but was prevented from doing so by the trial court sustaining defendant's objection to such evidence. Joseph Sartori, a witness for and an employee of defendant city, testified the farmers had no system of dividing or apportioning water until he and the city employes devised an oral schedule and understanding about September 1st. Before that the farmers would all want to take water at the same time. Later, between September 1st and 15th, the farmers made up a written schedule of their own to water celery which they were then planting. Plaintiff claims no damages for loss of celery or any interest in apportionment of water for raising celery. This witness testified, "We had to furnish water for Cortella's land." The farmers had a turn of water every week and every one was entitled to have water at a certain time. "He (Cortella) had so many hours according to the size of his farm." Dominick Bertelli testified he became watermaster on the Turnbow ditch after the crops had failed. His testimony does not contain anything concerning the nature or extent of Cortella's water rights for

1931. While it would appear from Sartori's testimony that the city endeavored to, and did, deliver some water to Cortella to irrigate his land, such testimony is wholly insufficient to sustain the allegation and finding that the water users had scheduled Cortella a weekly water turn of twelve hours each or that they had scheduled him any water, the loss of which resulted in the failure of his crops. Nor does it show the nature or source of Cortella's claim to the right to use water from defendant's canal. The evidence shows the damage to Cortella's crops occurred long before September 1st, upon or about which date the scheduling began according to Sartori. It is impossible to tell how much water Cortella was entitled to receive even if it be assumed that since he got some water he must have made arrangements with some one who was entitled to water for such water. In the absence of such a showing, it could not be determined that had he obtained the water to which he was entitled he could have matured his crops. The record discloses, that, in the trial of the case, plaintiff did not rely on the theory that he was entitled to water in 1931 because he had made arrangements therefor with the water users and their scheduling water to him gave him a right to sue under the contract. His counsel, in arguing the defendant's objection to questions tending to show how the water was divided among the farmers, did not claim such scheduling or division as the source of his right, but contended the evidence proper to show the amount of water Cortella was entitled to receive as bearing upon the question as to whether it was sufficient to mature his crops.

Since there is no evidence to sustain the findings of the court under any theory presented by the pleadings, the judgment of the trial court is hereby reversed, and the cause remanded for a new trial, with costs to appellant.

FOLLAND, C. J., and MOFFAT, WOLFE, and LARSON, JJ., concur.